OPINION OF THE COURT
Gabrielli, J.
Defendants in these two cases appeal from separate orders of the Appellate Division sustaining their respective convictions of criminal usury. In each case, the defendant contends that the indictment by which he was charged failed to state facts constituting a crime. For the reasons discussed below, the orders appealed from are affirmed.
Defendant Iannone was indicted by a Grand Jury for the crime of conspiracy and three counts of criminal usury. He pleaded guilty to one count of criminal usury in full satisfaction of that indictment. The count to which he pleaded guilty reads as follows: "AND THE GRAND JURY AFORESAID, by this Indictment, further accuse the above named defendants of the crime of CRIMINAL USURY, in violation of Section 190.40 of the Penal Law, committed as follows: The defendants, acting in concert and in aid of one another, from and between, in and about August of 1974 to December of 1974, in the County of Suffolk, not being authorized and permitted by law to do so, knowingly charged, took and received money as interest on a loan of a sum of money from a certain individual at a rate exceeding twenty-five percentum per annum and the equivalent rate for a shorter period.”[1] At sentencing, defen *593 dant for the first time moved to dismiss the indictment on the ground that it failed to set forth facts which constitute a crime. The motion was denied. On appeal to the Appellate Division, that court affirmed the judgment appealed from.
Defendant Corozzo was separately indicted for conspiracy, criminal usury, and grand larceny. The count charging him with criminal usury contained language very similar to that used in the Iannone indictment.[2] Following a jury trial during which he unsuccessfully moved to dismiss the criminal usury count for failure to make out a prima facie case against him, Corozzo was convicted of that crime. The Appellate Division affirmed his conviction. Before this court, defendant for the first time seeks to argue that the indictment was insufficient for failure to allege facts stating a crime.
Were we to decide the question of the sufficiency of the challenged indictments on the merits, we would sustain them. The right to indictment by a Grand Jury before being tried for an infamous crime is explicitly guaranteed by section 6 of article I of our State Constitution.[3] That right is a fundamental one which ordinarily may not be waived by a defendant, since it not only accrues to the benefit of the individual defendant, but also serves to preserve a significant societal interest.[4] This does not mean, however, that any particular *594 form of indictment is constitutionally mandated. A distinction must be drawn between the constitutional imperative that a person accused of an infamous crime normally be brought to trial only upon indictment by a Grand Jury, and the additional requirements as to the information a particular document issued by a Grand Jury must contain in order to serve as a valid and sufficient indictment.
The requirement of indictment by Grand Jury is intended to prevent the people of this State from potentially oppressive excesses by the agents of the government in the exercise of the prosecutorial authority vested in the State (see 1 Holds-worth, A History of English Law, p 321 [3d ed, 1922]). Thus, before an individual may be publicly accused of crime and put to the onerous task of defending himself from such accusations, the State must convince a Grand Jury composed of the accused’s peers that there exists sufficient evidence and legal reason to believe the accused guilty.
The indictment qua document, on the other hand, has traditionally served several purposes, not all of which implicate the right to indictment by Grand Jury, and not all of which remain as inextricably connected to the indictment as was once true. First and foremost, an indictment has been considered as the necessary method of providing the defendant with fair notice of the accusations made against him, so that he will be able to prepare a defense (see People v Armlin, 6 NY2d 231, 234). This function of the indictment is founded not upon the right to indictment by a Grand Jury, but rather on the notice requirement of section 6 of article I of our State Constitution and presumably that of the Sixth Amendment to the Federal Constitution as well. Achievement of this purpose historically involved both a legal and a factual statement: normally the indictment has been required to both charge all the legally material elements of the crime of which defendant is accused, and state that defendant in fact committed the acts which comprise those elements (see People v Farson, 244 NY 413).
Another traditional function of the indictment qua document has been to provide some means of ensuring that the crime for which the defendant is brought to trial is in fact one for which he was indicted by the Grand Jury, rather than some alternative seized upon by the prosecution in light of subsequently discovered evidence (see Russell v United States, 369 US 749, 770). This particular objective of an indictment *595 obviously does rest upon the guarantee of indictment by a Grand Jury, as it is meant to protect against possible avoidance of that mandate in a particular case.
Finally, the indictment has traditonally been viewed as the proper means of indicating just what crime or crimes defendant has been tried for, in order to avoid subsequent attempts to retry him for the same crime or crimes (see People v Williams, 243 NY 162, 165). This function is based upon the constitutional prohibition against double jeopardy, of course, and is illustrative of the way in which the device of the indictment was seized upon as a convenient method of achieving several necessary goals.
Indeed, each of the functions traditionally fulfilled by the indictment is a necessary one, in the sense that each serves to provide some requisite constitutional protection. It does not necessarily follow, however, that the indictment is and must remain the constitutionally mandated means of securing each of those constitutional rights. To so hold would be to mistake the forms of legal procedure for the substantive guarantees they are intended to embody as best they can at a particular moment in legal history, and to encrust them with an aura of inflexible invulnerability which can only serve to deter subsequent attempts to create even more effective methods of achieving the ever elusive goal of justice. Rather, we must recognize that as a consequence of the vagaries of legal history and the not always consistent development of procedural mechanisms, each of these laudatory objectives was at one time deemed best achieved by utilization of the indictment. Such is not itself a constitutional imperative, however, and if a requisite constitutional protection is provided by other devices, the failure of a particular indictment to suffice for that particular purpose is not necessarily fatal.
The historical development of the form of indictment presently used in New York exemplifies a continuing attempt to eschew formalism and ritual in favor of a more realistic approach to the basic requirements of a valid indictment. Under the common law, the indictment was an arcane and intricate work of art which all too often served to mystify rather than to inform defendants. "At that time specialized knowledge of legal precedents and the technical craftmanship of a legal artist were required for the drawing of an indictment. Perfection of form was essential to validity” (People v Bogdanoff, 254 NY 16, 21; see 4 Blackstone’s Commentaries, *596 ch 23). As one commentator reported, "very great niceties have been allowed to prevail * * * This circumstance has frequently been regretted by able judges, as offering too many opportunities for the escape of prisoners, to the encouragement rather than the depression of crime. Thus Lord Hale observed, that the strictness required in indictments was grown to be a blemish and inconvenience in the law” (1 Chitty’s Criminal Law, p 170). As significantly, the common-law indictment often "left the accused in the dark as to the nature of the crime charged” (Denzer, Practice Commentary, McKinney’s Cons Laws of NY, Book 11 A, CPL art 200, p 195), thus actually failing to fulfill any of the traditional functions of an indictment even though it was technically sufficient.
With the enactment of the Code of Criminal Procedure (L 1881, ch 442), the Legislature provided an alternative and considerably less complex form of indictment, which was intended to prevent dismissals of indictments due to mere technical defects while at the same time ensuring that the accused would be adequately informed of the charges lodged against him (see People v Williams, 243 NY 162, supra). Under section 275 of the code, an indictment was required to contain "[a] plain and concise statement of the act constituting the crime”. Although considerably simpler than the common-law indictment, the section 275 indictment became known to the bar as the "long-form” indictment following later authorization by the Legislature (L 1929, ch 176) of the "simplified” indictment, which merely required "[a] statement of the specific crime with which the defendant is charged” (Code Crim Pro, § 295-b, subd 2).
Thus, under the latter statute, an indictment which essentially merely cited the section of the law which a defendant was accused of violating would ordinarily be sufficient. The simplified indictment may no longer be used in this State, as it was not retained when the Criminal Procedure Law was enacted to replace the Code of Criminal Procedure. One reason for this was that, as a practical matter, the simplified indictment often told the accused little about the nature of the crime he was accused of committing. Nonetheless, the validity of the simplified indictment was consistently upheld by this court against constitutional challenges. In People v Bogdanoff (254 NY 16, supra), the seminal case sustaining the simplified indictment, we indicated that such an indictment would not pass constitutional muster were it the only informa *597 tional document which a defendant could obtain as of right. We concluded, however, that the perceived defects in the simplified indictment were alleviated by the fact that a defendant charged via a simplified indictment could demand a bill of particulars (Code Crim Pro, § 295-g) which must provide "such particulars as may be necessary to give the defendant and the court reasonable information as to the nature and character of the crime charged” (Code Crim Pro, § 295-h, subd 2), and which became a part of the record. Implicit in this conclusion was the rationale that an indictment need not be deemed constitutionally insufficient for a failure to conform to all the traditional requirements of a valid indictment, as long as all the requisite protections normally provided by means of the indictment are in fact made available as of right to a defendant. In such a case, moreover, the sufficiency of an indictment would not be disturbed by the fact that a particular defendant for some reason did not choose to utilize a procedural mechanism which was made available to him (see People v Langford, 16 NY2d 32).
That the simplified indictment as such no longer exists in New York does not detract from the force of those considerations which led us to conclude that the simplified indictment was valid. Indeed, subsequent changes in criminal procedures have served to decrease the significance of the indictment as an informational document. For example, it has traditionally been stated as a hard and fast rule that a bill of particulars may not be used to sustain an otherwise defective indictment (e.g., Denzer, Practice Commentary, McKinney’s Cons Laws of NY, Book 11 A, CPL 200.90, p 292). That this is not a fundamental rule should have been made clear by our decision in Bogdanoff, in which we sustained the simplified indictment because of the availability of the bill of particulars. The traditional refusal to allow buttressing of an indictment by a bill of particulars was based on the fact that there existed no statutory authorization for a bill of particulars, and thus the availability of such a device was left to the discretion of the trial court (see People v Bogdanoff, 254 NY 16, 24, supra). That was not a problem with respect to the simplified indictment, since a defendant was entitled to a bill of particulars as a matter of right. Today there exists statutory authorization for a bill of particulars with respect to all indictments. Indeed, CPL 200.90 provides that "[i]f the court is satisfied that any or all of the items of information requested are necessary to *598 enable the defendant adequately to prepare or conduct his defense, it must grant the motion as to every such necessary item” (emphasis added). Thus, the effect of the present provisions are in fact the same as were the provisions concerning simplified indictments, since there also it was for the court to determine whether a particular piece of information was necessary.
In a similar vein, the development of modern discovery rules in criminal cases has diminished the significance of the indictment’s function as a provider of information (see CPL art 240). The importance of the indictment as an instrument for effectuating other objectives traditionally obtained through the indictment has also lessened. For example, the need to utilize the indictment as the means of resolving any double jeopardy inquiry has been considerably alleviated by the modern practice of maintaining full records of criminal proceedings which may be considered by subsequent courts. Similarly, the function of the indictment as the vehicle for assuring that the crime for which the defendant is tried is the one for which he was indicted by the Grand Jury is of less significance due to the practicability of using sources extraneous to the indictment should a challenge be made on those grounds (see CPL 210.30).
 In short, careful consideration of the realities of criminal practice in New York leads ineluctably to the conclusion that the basic essential function of an indictment qua document is simply to notify the defendant of the crime of which he stands indicted. This purpose is clearly reflected by the present statutory provisions controlling the form of the indictment, which are in essence quite similar to the so-called long-form indictment used under the Code of Criminal Procedure. CPL 200.50 requires an indictment to contain "[a] plain and concise factual statement in each count which, without allegations of an evidentiary nature, asserts facts supporting every element of the offense charged and the defendant’s or defendants’ commission thereof with sufficient precision as to clearly apprise the defendant or defendants of the conduct which is the subject of the accusation”. Thus, "[a]s a general rule, the indictment need only allege where, when and what the defendant did” (Pitler, New York Criminal Practice Under the CPL, p 302). Were we able to reach the merits of this challenge to the indictments, we would conclude that the challenged indictments fulfill both the statutory and the con *599 stitutional mandates for a valid indictment in this State. They charge each and every element of the crime of criminal usury, and allege that the defendants committed the acts which constitute that crime at a specified place during a specified time period. No more is needed.
While it is true that the prosecutor might have been wiser had he included more detail, what was presented suffices to charge a statutory crime such as criminal usury. When indicting for statutory crimes, it is usually sufficient to charge the language of the statute unless that language is too broad (see People v Farson, 244 NY 413, 417, supra). That is especially true when the crime is one such as this, in which the acts that constitute the crime are many and are spread over a considerable period of time and space. To require a listing of every action undertaken by the defendant in the course of this crime would serve no useful purpose, and would instead mark a step back towards the needless complexities of the common-law indictment. We would note, however, that the requirements for a valid indictment will vary with the particular crime involved, and what is sufficient to charge the crime of criminal usury would be insufficient with respect to many other crimes.
A word of caution is in order. It is beyond cavil that a defendant has a basic and fundamental right to be informed of the charges against him so that he will be able to prepare a defense. Hence the courts must exercise careful surveillance to ensure that a defendant is not deprived of this right by an overzealous prosecutor attempting to protect his case or his witnesses. Any effort to leave a defendant in ignorance of the substance of the accusation until the time of trial must be firmly rebuffed. This is especially so where the indictment itself provides a paucity of information. In such cases, the court must be vigilant in safeguarding the defendant’s rights to a bill of particulars and to effective discovery. Should the prosecutor decide to use an indictment which, although technically sufficient, does not adequately allow a defendant to properly prepare for trial, he may well run afoul of the defendant’s right to be informed of the accusations against him. These cases do not present any such difficulty, however, for the defendants do not contend that they were in fact unaware of the crimes with which they were charged, nor that they were actually prejudiced; rather, they contend only that the indictments with which they were charged were insuffi *600 cient. Thus, were the issue of the sufficiency of these indictments properly before us, we would sustain them for the many reasons discussed above.
As it is, however, the defendants in these two appeals have failed to preserve a question of law which this court may review and have waived their objections to the sufficiency of the factual allegations in the indictments by which they were brought before the courts. Although the questions of waiver and failure to preserve a question of law are conceptually severable, in the present case the dispositive considerations are the same. The Court of Appeals, unlike the Appellate Division, normally may review only questions of law which were timely raised before the. court of original jurisdiction. Defendant Iannone made no challenge to the sufficiency of the factual statements in the indictment until he appeared for sentencing, some time after his plea of guilty. Defendant Corozzo seeks to raise that issue for the first time before this court. Since neither defendant timely moved to dismiss the indictment on that ground (see CPL 210.20, subd 2; 255.20), they did not preserve that issue for our review (People v Soto, 44 NY2d 683, 684; People v Willett, 213 NY 368, 374-375; Cohen and Karger, Powers of the New York Court of Appeals, p 748).
In reaching this conclusion, we reject defendants’ contention that an insufficiency in the factual allegations of an indictment is a jurisdictional defect which may not be waived and which is reviewable in this court even absent any objection below (see, generally, People v Patterson, 39 NY2d 288, 295, affd 432 US 197). Although it is true that a jurisdictional defect in an indictment is not waived by a guilty plea and may be raised for the first time on appeal (see People v Scott, 3 NY2d 148), it is equally true that not every defect in an indictment is a jurisdictional defect for these purposes (see, e.g., People v Brous, 296 NY 1028). In essence, an indictment is jurisdictionally defective only if it does not effectively charge the defendant with the commission of a particular crime. For example, an indictment will be jurisdictionally defective if the acts it accuses defendant of performing simply do not constitute a crime (see People v Case, 42 NY2d 98), or if it fails to allege that a defendant committed acts constituting every material element of the crime charged (see People v McGuire, 5 NY2d 523). Insufficiency in the factual allegations alone, as opposed to a failure to allege every material element *601 of the crime, does not constitute a nonwaivable jurisdictional defect which may be reviewed by this court even in the absence of an objection below (People v Soto, 44 NY2d 683, 684, supra).
In summation, at least in the absence of any claim that a defendant has been deprived of his right to be informed of the charges against him, any objection to the sufficiency of the factual allegations in an indictment which does properly charge the commission of a crime is waived unless timely made. In the instant appeals, there are no claims of actual prejudice, the indictments do fully charge the crime of criminal usury, and the arguments made before this court concern only the sufficiency of the factual allegations. Since the defendants did not timely object to this claimed defect, they have waived their right to do so and have failed to preserve any question of law for review by this court.
We have considered the other issues raised by defendant Corozzo, and find them to be unpersuasive. The trial court’s instructions to the jury were neither inconsistent nor erroneous, especially in light of the absence of any claim or indication that defendant Corozzo might have been authorized by law to charge a higher interest rate.
Accordingly, in each case the order appealed from should be affirmed.
Chief Judge Breitel and Judges Jasen, Jones, Wachtler, Fuchsberg and Cooke concur.
In each case: order affirmed.

. The language of the indictment carefully tracks and includes every material element of the crime of criminal usury, which was then defined as follows: "A person is guilty of criminal usury when, not being authorized or permitted by law to do so, he knowingly charges, takes or receives any money or other property as interest on the loan or forbearance of any money or other property, at a rate exceeding twenty-five percentum per annum or the equivalent rate for a longer or shorter period” (L *593 1967, ch 791, § 27). This language now defines the crime of criminal usury in the second degree (Penal Law, § 190.40).

. Corozzo was charged as follows: "The defendants, acting in concert and in aid of one another, from between, in and about the month of June of 1974, to between, in and about the month of September of 1974, in the County of Suffolk, not being authorized and permitted by law to do so, knowingly charged, took and received money as interest on a loan of a sum of money from a certain individual at a rate exceeding twenty-five percentum per annum and the equivalent rate for a shorter period.”

. The right to indictment by a Grand Jury in New York is dependent solely upon our State Constitution, since the Grand Jury provision contained in the Fifth Amendment to the Federal Constitution is not applicable to the States (Hurtado v California, 110 US 516; see Peters v Kiff, 407 US 493, 496).

. Prior to January 1, 1974, section 6 of article I of the New York Constitution provided in pertinent part that "[n]o person shall be held to answer for a capital or otherwise infamous crime * * * unless on indictment of a grand jury”. That provision completely precluded any possibility of a waiver by a defendant of indictment by a Grand Jury because it established a "fundamental public [right]” (Matter of Simonson v Cahn, 27 NY2d 1, 4). Since then, however, the section has itself been amended to create a single exception to this principle: "a person held for the action of a grand jury upon a charge for such an offense, other than one punishable by death or life imprisonment, with the consent of the district attorney, may waive indictment by a grand jury and consent to be prosecuted on an information filed by the district attorney”.