Jasen, J.
(dissenting). The majority would hold today that an indictment which incorporates provisions of the Code of Judicial Conduct to define those duties "clearly inherent in the nature of [a public servant’s][1] office” is legally insufficient *666 insofar as such standards, absent legislative directive, cannot prescribe conduct for Judges, the violation of which would expose a Judge to criminal liability. I must dissent.
Appellant, a Suffolk County District Court Judge, was convicted, after a jury trial, of official misconduct (Penal Law, § 195.00, subd 2). The jury found, as charged in the indictment, that appellant improperly dismissed for failure to prosecute a simplified traffic information received by a close personal friend before its specified return date, a practice commonly termed "ticket fixing”. On appeal, the Appellate Division unanimously affirmed the judgment of conviction. The majority would now reverse the judgment of conviction and dismiss the indictment upon which this conviction rests.
At issue is the sufficiency of the indictment charging appellant with the crime of official misconduct. Section 195.00 of the Penal Law provides, in relevant part: "A public servant is guilty of official misconduct when, with intent to obtain a benefit or to injure or deprive another person of a benefit * * * 2. He knowingly refrains from performing a duty which is imposed upon him by law or is clearly inherent in the nature of his office.” (Emphasis added.) Special note must be taken of the fact that the Legislature defined the duty embraced by the statute in the disjunctive; thus, a public servant is subject to criminal sanctions for failure to perform a duty unmistakably inherent in the natúre of his office, irrespective of whether the Legislature has chosen to delineate such duties in statutory provisions. The terms of the statute are unequivocal, and tolerate no other construction.
While the duty to act must be "so clear that the public servant is on notice as to the standards that he must meet” (Hechtman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law, § 195.00, p 387), there is no doubt that this threshold requirement was satisfied in this case. The Code of Judicial Conduct, promulgated by the American Bar Association and adopted, with certain amendments, by the New York State Bar Association, was made binding on appellant by virtue of its incorporation in the Rules of the Appellate Division, Second Department.[2] Section 700.5 of the rules (22 NYCRR 700.5) expressly provides that "[i]n the performance of his duties * * * the judge is in all respects bound by *667 the Canons of Judicial Ethics.” (Emphasis added.) It is difficult to imagine a more compelling example of duties "clearly inherent in the nature of [a public servant’s] office” than those embodied in the code promulgated to govern a Judge’s action so that the integrity of the judiciary may be maintained and the best interests of society safeguarded and fostered.
In so concluding, no violence befalls the indisputable postulate that only the legislative branch of government can determine what conduct shall constitute a crime and the sanctions prescribed, for the Legislature has made it a crime for a public servant, "with intent to obtain a benefit * * * [to] knowingly [refrain] from performing a duty which is * * * clearly inherent in the nature of his office.” Appellant was not indicted, nor convicted, of violating Canons 2 and 3 of the Code of Judicial Conduct in-and-of themselves, but, rather, indicted and convicted for the Penal Law crime of official misconduct. No action was taken by the District Attorney and the Grand Jury, "unaided by any legislative enactment”, to convert the ethical standards set forth in the Code of Judicial Conduct into penal statutes. Rather, the prosecutor was merely performing the obligation for which he is held accountable to the general public to enforce the penal laws as promulgated by the Legislature. Section 195.00 makes express reference to duties "clearly inherent in the nature of [a public servant’s] office”, and it appears almost axiomatic to state that when a Judge is indicted for the Penal Law crime of official misconduct, the rules adopted by the Appellate Division which govern his conduct must define such duties. (See Rules of Appellate Division, Second Department, § 700.5, subd [a], ["the judge is * * * bound by the Canons of Judicial Ethics”].)
Nor does this conclusion impinge upon the majority’s view that the constitutional and statutory provisions for the discipline of Judges pre-empt the imposition of criminal sanctions for the violation of those standards embodied in the Code of Judicial Conduct. The majority qualifies this position by noting that the commencement of criminal proceedings is not barred when the conduct for which the Judge is being charged "is expressly proscribed by the sections of the Penal Law.” Here, section 195.00 of the Penal Law, and not the Code of Judicial Conduct, makes it a crime, in no uncertain terms, for a public servant, "with intent to obtain a benefit * * * [to] knowingly [refrain] from performing a duty which is * * * clearly inherent in the nature of his office.” If we can assume, *668 as indeed simple logic requires us to assume, that the phrase "clearly inherent in the nature of his office” includes those ethical standards and duties which are binding upon a Judge, then there exists no ground for distinguishing the crime of official misconduct from other crimes which constitute an independent criminal offense (e.g., bribe receiving — Penal Law, § 200.12).
To accept the reasoning espoused by the majority, the scope of section 195.00 of the Penal Law would be restricted in an intolerable manner. Section 195.00 is "directed, in broad terms, at all official misconduct by a public servant.” (Hechtman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, art 195, p 384.) To extract from its coverage transgressions by members of the judiciary clearly in violation of judicial duties would result in insulating Judges from many criminal prosecutions thereunder, a result clearly not intended by the Legislature. Indeed, the majority concedes that "[i]f the particular misconduct transgresses both the Penal Law and the canons of ethics,” both criminal actions and disciplinary proceedings may be commenced.
Insofar as, in our view, the standards of judicial conduct contained in the code constitute duties "clearly inherent in the nature of [a judge’s] office”, within the meaning of subdivision 2 of section 195.00 of the Penal Law, it becomes necessary to now address the issue, not reached by the majority, as to the sufficiency of the indictment viewed in its entirety. The count of the indictment submitted to the jury charged in pertinent part that appellant: "a public servant, namely a District Court Judge in Suffolk County, with the intent to obtain a benefit * * * knowingly refrained from performing a duty which is imposed upon her by law or is clearly inherent in the nature of her office, to wit, on December 24, 1974, in Suffolk County, in her capacity as District Court Judge, she improperly dismissed, for failure to prosecute, a Simplified Traffic Information received by * * * a personal friend, in violation of * * * the Code of Judicial Conduct, Canons 2 and 3.”
Although it could be said that this count was inartfully drafted, this observation does not render the indictment insufficient, for as this court has recently observed, "careful consideration of the realities of criminal practice in New York leads ineluctably to the conclusion that the basic essential function of an indictment qua document is simply to notify the defen *669 dant of the crime of which he stands indicted.” (People v Iannone, 45 NY2d 589, 598.) If the indictment serves to inform the defendant of the charges being brought against him and the conduct upon which such charges are predicated so as to enable the defendant to prepare for trial, its purpose is fulfilled and the indictment will not be dismissed. (See People v Iannone, 45 NY2d, at p 599, supra; People v Fitzgerald, 45 NY2d 574, 579-580.)[3]
The count of the indictment charged to the jury tracked, prefatorily, the language of subdivision 2 of section 195.00 of the Penal Law, and such procedure, by itself, has been said to be "usually sufficient to charge” the defendant, unless the language of the statute "is too broad.” (See People v Iannone, 45 NY2d, at p 599, supra, citing People v Farson, 244 NY 413, 417.) Further, the count recited the operative facts upon which the charge was predicated (CPL 200.50, subd 7), and specified the duties "clearly inherent in the nature of [the judge’s] office” which she knowingly refrained from performing ("in violation of * * * the Code of Judicial Conduct, Canons 2 and 3”). Given these circumstances, the indictment must be declared legally sufficient.
Further, special mention should be made of the availability of a bill of particulars to supply a defendant with the further, and indeed more detailed, information required in preparing his defense. CPL 200.90 (subd 3) provides, in pertinent part, that "[i]f the court is satisfied that any or all of the items of information requested are necessary to enable the defendant adequately to prepare or conduct his defense, it must grant the motion as to every such necessary item” (emphasis added). Thus, if appellant required greater or more specific information to advise her of the duty she was charged with refraining from performing, she could have invoked the court’s assistance and demanded a bill of particulars which would have supplied her with such information.[4]
*670 In sum, an examination of the count of the indictment submitted to the jury reveals that, under prevailing legal standards, it was legally sufficient. Inasmuch as appellant’s remaining contentions are without merit, the order of the Appellate Division sustaining the judgment of conviction should be affirmed.
Judges Gabrielli, Wachtler and Fuchsberg concur with Judge Jones; Judge Jasen dissents and votes to affirm in a separate opinion in which Chief Judge Cooke concurs.
Order reversed, etc.
APPENDIX
CANON 2
A Judge Should Avoid Impropriety and the Appearance of Impropriety in All His Activities
A. A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.
B. A judge should not allow his family, social, or other relationships to influence his judicial conduct or judgment. He should not lend the prestige of his office to advance the private interests of others; nor should he convey or permit others to convey the impression that they are in a special position to influence him. He should not testify voluntarily as a character witness.
CANON 3
A Judge Should Perform the Duties of His Office Impartially and
Diligently
The judicial duties of a judge take precedence over all his other activities. His judicial duties include all the duties of his office prescribed by law. In the performance of these duties, the following standards apply:
A. Adjudicative Responsibilities.
(1) A judge should be faithful to the law and maintain professional competence in it. He should be unswayed by partisan interests, public clamor, or fear of criticism.
(2) A judge should maintain order and decorum in proceedings before him.
(3) A judge should be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom he deals in his official capacity, and should require similar conduct of lawyers, and of his staff, court officials, and others subject to his direction and control.
(4) A judge should accord to every person who is legally interested in a proceeding, or his lawyer, full right to be heard according to law, and, except as authorized by law, neither initiate nor consider ex *671 parte or other communications concerning a pending or impending proceeding. A judge, however, may obtain the advice of a disinterested expert on the law applicable to a proceeding before him if he gives notice to the parties of the person consulted and the substance of the advice, and affords the parties reasonable opportunity to respond.
(5) A judge should dispose promptly of the business of the court.
(6) A judge should abstain from public comment about a pending or impending proceeding, in any court, and should require similar abstention on the part of court personnel subject to his direction and control. This subsection does not prohibit judges from making public statements in the course of their official duties or from explaining for public information the procedures of the court.
(7) A judge should prohibit broadcasting, televising, recording, or taking photographs in the courtroom and areas immediately adjacent thereto during sessions of court or recesses between sessions, except that a judge may authorize:
(a) the use of electronic or photographic means for the presentation of evidence, for the perpetuation of a record, or for other purposes of judicial administration;
(b) the broadcasting, televising, recording, or photographing of investitive, ceremonial, or naturalization proceedings;
(c) the photographic or electronic recording and reproduction of appropriate court proceedings under the following conditions:
(i) the means of recording will not distract participants or impair the dignity of the proceedings;
(ii) the parties have consented, and the consent to being depicted or recorded has been obtained from each witness appearing in the recording and reproduction;
(iii) the reproduction will not be exhibited until after the proceeding has been concluded and all direct appeals have been exhausted; and
(iv) the reproduction will be exhibited only for instructional purposes in educational institutions.
B. Administrative Responsibilities.
(1) A judge should diligently discharge his administrative responsibilities, maintain professional competence in judicial administration, and facilitate the performance of the administrative responsibilities of other judges and court officials.
(2) A judge should require his staff and court officials subject to his direction and control to observe the standards of fidelity and diligence that apply to him.
(3) A judge should take or initiate appropriate disciplinary measures against a judge or lawyer for unprofessional conduct of which the judge may become aware.
(4) A judge should not make unnecessary appointments. He should exercise his power of appointment only on the basis of merit, avoiding nepotism and favoritism. He should not approve compensation of appointees beyond the fair value of services rendered.
C. Disqualification.
(1) A judge should disqualify himself in a proceeding in which his *672 impartiality might reasonably be questioned, including but not limited to instances where:
(a) he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;
(b) he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it;
(c) he knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;
(d) he or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:
(i) is a party to the proceeding, or an officer, director, or trustee of a party;
(ii) is acting as a lawyer in the proceeding;
(iii) is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding;
(iv) is to the judge’s knowledge likely to be a material witness in the proceeding;
(2) A judge should inform himself about his personal and fiduciary financial interests, and make a reasonable effort to inform himself about the personal financial interests of his spouse and minor children residing in his household.
(3) For the purposes of this section:
(a) the degree of relationship is calculated according to the civil law system;
(b) "fiduciary” includes such relationships as executor, administrator, trustee, and guardian;
(c) "financial interest” means ownership of a legal or equitable interest, however small, or a relationship as director, advisor, or other active participant in the affairs of a party, except that:
(i) ownership in a mutual or common investment fund that holds securities is not a "financial interest” in such securities unless the judge participates in the management of the fund;
(ii) an office in an educational, religious, charitable, fraternal, or civic organization is not a "financial interest” in securities held by the organization;
(iii) the proprietary interest of a policy holder in a mutual insurance company, of a depositor in a mutual savings association, or a similar proprietary interest, is a "financial interest” in the organization only if the outcome of the proceeding could substantially affect the value of the interest;
(iv) ownership of government securities is a "financial interest” in the issuer only if the outcome of the proceeding could substantially affect the value of the securities.
*673 D. Remittal of Disqualification.
A judge disqualified by the terms of Canon 3C(l)(c) or Canon 3C(l)(d) may, instead of withdrawing from the proceeding, disclose on the record , the basis of his disqualification. If, based on such disclosure, the parties and lawyers, independently of the judge’s participation, all agree in writing that the judge’s relationship is immaterial or that his financial interest is insubstantial, the judge is no longer disqualified, and may participate in the proceeding. The agreement, signed by all parties and lawyers, shall be incorporated in the record of the proceeding.

. The Penal Law defines "public servant” as "any public officer or employee of the state or of any political subdivision thereof or of any governmental instrumentality within the state”. (Penal Law, § 10.00, subd 15.)

. Section 700.1 states that "[t]hese rules shall apply in all actions and proceedings, civil and criminal, in courts subject to the jurisdiction of the Appellate Division of the Supreme Court in the Second Judicial Department.” (Emphasis added.)

. CPL 200.50 provides, by statute, both the form and content of an indictment.

. It is most interesting to note, in this regard, that appellant did request a bill of particulars. However, appellant only demanded the following: "Whether there was any wire tap, any interception of telephone communications, or electronic or mechanical eavesdropping with or without a Court order; if with a Court order, to supply defendant with a copy of same.” No such interceptions existed, and appellant requested no further information. Thus, it would appear that appellant was not "left in the dark” regarding the crimes of which she was charged, but, rather, fully understood the charges brought against her and the factual circumstances from which they arose.