Bellacosa, J.
(dissenting). I would reverse and reinstate the informations charging the crimes of lewdness in a public place (Penal Law § 245.00 [a]): "intentionally exposing] the private or intimate parts of [one’s] body in a lewd manner or commit[ting] any other lewd act (a) in a public place” (emphasis added). The sole issue in this case is whether the concededly lewd exposures were sufficiently pleaded as having occurred in a public place.
The crimes, according to the criminal informations, took place in parked vehicles on public streets in residential neighborhoods in Buffalo. Illustrative of the salient portions of the sworn accusatory informations based on the police officers’ "own knowledge” are:
"that [McNamara] while at 291 15th Street, a public place * * * in the rear seat of a [car] * * * engaged in an act of sexual intercourse * * * [in a] vehicle * * * parked in a well lit area, and its interior was readily visible] to passer[s]-by”;
"that [Harrison] while at 70 Colorado, a public place * * * while seated in the passenger seat of a [truck engaged in fellatio] * * * [while] parked in a well lit residential area”;
"that [Terrell and Hill were] while at 34 Colorado, a public place * * * observed by officers committing a sexual act [fellatio] in the front seat [of the car] * * * on a public residential street” or "a public street in a residential area”.
Where the Legislature has given no indication that a different meaning is intended, the plain meaning of the statutory *636 words controls (People v Cruz, 48 NY2d 419, 427-428; see, Matter of Alonzo v New York City Dept. of Probation, 72 NY2d 662, 665). The plain meaning of "public place” includes the residential street locations specified in the accusatory instruments. Acts of sexual intercourse and fellatio performed at selected sites on public streets in parked vehicles are not and should not be exempted from prosecution at the threshold of the criminal proceeding, a result brought about by the rationale of this case.
The essential flaw, as I see it, in the majority’s analysis, leading to a declaration of facial defectiveness of the accusatory, instruments, is the failure to give effect to the plain and commonly understood meaning of "public place” and, instead, to add a significant element to the Legislature’s definition of this crime. No support is evident to me for the majority’s conclusion that "public place” is a place where such acts "can, and likely would, be seen by the casual passerby” and that this new ingredient must be pleaded in haec verba or with underlying factual or evidentiary allegations (majority opn, at 634). The casual passersby observation gloss, moreover, is entirely inappropriate at the accusatory instrument stage of these prosecutions. The particular criminal informations, ironically, contain graphic, explicit or commonly accepted inferential assertions satisfying this very ingredient, even under the test which the majority adopts. It is not necessary that the informations expressly negate the existence of potential defenses or other factors impeding the officers’ views inside the vehicles. Again, these are matters of proof, not pleading.
The hypertechnical approach in this respect is contrary to modern criminal jurisprudence and precedents with respect to the contents of accusatory instruments. It transforms matters of proof into tautological pleadings formalities, a throwback to long-discarded common-law pleadings notions. The unsettling principle thus emerging from the case is likely to generate undesirable confusion with respect to other categories of criminal accusation and rattles the rationale of People v Iannone (45 NY2d 589, 596).
The courts enjoy no competence to superimpose greater definitional content on the Legislature’s enactment in this area, or to require greater specificity from prosecutors in their accusatory documents. The statute and its enforcement are the vehicles to insure that public streets are free of these criminal activities. The majority’s addition, for pleading pur *637 poses, to the statutory words, "public place”, instead transforms the public streets into sanctuaries of such criminal activity (see, People v Iannone, 45 NY2d 589, supra; cf., People v Alejandro, 70 NY2d 133). The Legislature has determined that the forbidden conduct itself — public lewdness — is sufficiently offensive and detrimental to the common good and quality-of-life values of ordinary citizens — where they live— that it constitutes a defined crime.
Moreover, the accused actors were, in fact, observed performing their sex acts in public. Police officers saw enough of the criminal conduct and acts to supply the official sworn statements as parts of the criminal accusatory instruments. For accusatory purposes, nothing could be more public than what actually happened, where it happened, what the police officers observed and what the prosecutor charged — other than perhaps the actors engaging in their criminal sexual conduct on the sidewalk itself or in a vehicle with windows, doors or convertible roofs open. Holding that sexual activity performed in vehicles parked on residential streets is not committed in a "public place” defies the natural, plain and commonly understood meaning and purpose of the Legislature’s enactment in Penal Law § 245.00 (a). This is not a case, as the majority posits (majority opn, at 634, n 4), of misusing Justice Stewart’s famous aphorism concerning obscenity (Jacobellis v Ohio, 378 US 184, 197); here, the police officers swore they saw the criminal conduct, which they graphically described in the accusatory instruments. They knew what they saw and that it violated a penal statute and they did what they were supposed to do: criminally charged the defendants.
Because I agree with the majority that the informations accused defendants of strict liability crimes not requiring any culpable mental state, I am baffled that, in the next breath, the majority proceeds to rewrite the plainly worded statute by inserting, without any authority, a judicial gloss which, in effect, adds a culpable mental state or new element into the penal statute. Since I know of no authority for this, I must dissent and vote to reverse.
Chief Judge Wachtler and Judges Simons, Alexander, Titone and Hancock, Jr., concur with Judge Kaye; Judge Bellacosa dissents and votes to reverse in a separate opinion.
Order affirmed.