State of New York
Court of Appeals

OPINION

This opinion is uncorrected and subject to revision
before publication in the New York Reports.

No. 54
The People &c.,
           Appellant,
      v.
Arthur W. Ellis Jr.,
           Respondent.

Kathryn M. Moryl, for appellant.
Noreen McCarthy, for respondent.

FAHEY, J.:

The People contend that defendant, a level three sex offender, was required to register his Facebook account as an "internet identifier" pursuant to Correction Law § 168-f (4). That statute requires that sex offenders register with the Division of Criminal Justice

Services (DCJS) "no later than ten calendar days after any change of address, internet accounts with internet access providers belonging to such offender, [or] internet identifiers that such offender uses . . . " (Correction Law § 168-f [4]).[*]  "Internet identifiers" are defined as "electronic mail addresses and designations used for the purposes of chat, instant messaging, social networking or other similar internet communication" (Correction Law § 168-a [18]).  Failure to register with DCJS is a class E felony for the first offense and a class D felony for subsequent offenses (see Correction Law § 168-t).

In 2015, defendant completed his annual "Verification Form" (see Correction Law § 168-f [2]).  The form required defendant to disclose to DCJS certain "Internet Information," including his "service provider," "screen name[s]," and "email address[es]."  Defendant disclosed information in each of these preprinted sections, including his email address.  Although he disclosed the identifier he used to log into Facebook, and the name by which he went on Facebook (his real name), he did not disclose the fact that he had a Facebook account.  He was charged with failing to register in violation of Correction Law § 168-f (4) on the theory that he failed to disclose this account as an "internet identifier."

Defendant moved to dismiss the indictment, claiming, among other things, that it failed to charge a crime or offense, inasmuch as Facebook is not an "internet identifier."

---

[*] An "[i]nternet access provider" is defined as "any business, organization or other entity engaged in the business of providing a computer and communications facility through which a customer may obtain access to the internet, but does not include a business, organization or other entity to the extent that it provides only telecommunications services" (Correction Law § 168-a [17]).  The parties agree that Facebook does not qualify as an "internet access provider" and that defendant's Facebook account was not an "internet account[] with [an] internet access provider[]" (id. § 168-f [4]).

County Court denied that motion, and defendant pleaded guilty as charged. The court noted that defendant was not waiving his challenge as to whether there was an extant crime charged in the indictment. The Appellate Division reversed the judgment and dismissed the indictment based on its conclusion that although sex offenders must disclose all "internet identifiers" they use, the statute does not require that they disclose the services on which they have accounts, and therefore the indictment failed to charge defendant with a crime, rendering the indictment jurisdictionally defective (162 AD3d 161 [3d Dept 2018]). A Judge of this Court granted the People leave to appeal (32 NY3d 937 [2018]). We now affirm.

The Appellate Division correctly concluded that a Facebook account is not an "internet identifier" that defendant must disclose to DCJS because neither Facebook nor the account is an email address or a "designation[] used for the purposes of chat, instant messaging, social networking or other similar internet communication" (Correction Law § 168-a [18]). By contrast, the "internet identifier" an offender uses to access the Facebook account must be disclosed to DCJS, and here, defendant disclosed the email address that he uses to access his Facebook account. Similarly, the name one uses to interact with other users on Facebook—such as a screen name, pseudonym or alias—may be an internet identifier that must be disclosed to DCJS if it is a "designation[] used for the purposes of chat, instant messaging, social networking, or other similar internet communication" (id.). Here, however, there is no dispute that defendant used his real, full name to interact with other Facebook users.

The People's contention that defendant was required to disclose the existence of his Facebook account to DCJS, in addition to any email addresses and designations associated with that account, cannot be reconciled with the relevant statutes, which aim to provide Facebook and similar internet services with access to information sufficient to allow them to detect and curtail the inappropriate use of social networking by sex offenders. The term "internet identifier" was added to the statutory scheme in 2008 with the enactment of the "Electronic Security and Targeting of Online Predators Act," or "e-STOP" (L 2008, ch 67). The legislative purpose and findings of the law demonstrate that the legislature was concerned that "[b]ehind a computer screen, convicted sex offenders are able to *hide their identity* while attempting to engage children in illicit activity" and that the internet contained a "promise of anonymity" (L 2008, ch 67, § 1 [emphasis added]). The Senate Introducer's Memorandum in Support of e-STOP further confirms that the legislature was concerned with the ability of sex offenders to interact anonymously with others, including children, on the Internet (see Senate Introducer's Mem in Support, Bill Jacket, L 2008, ch 67 at 6-7, 2008 McKinney's Session Laws of NY at 1740).

To address the specific issue of sex offenders accessing social media platforms anonymously, e-STOP allowed DCJS to release to "authorized internet entit[ies]" the "internet identifiers" used by sex offenders in order to enable those authorized internet entities to "prescreen or remove sex offenders from [their] services" and to "advise law enforcement and/or other governmental entities of potential violations of law and/or threats to public safety" (Correction Law § 168-b [10]). An "[a]uthorized internet entity" is defined as "any business, organization or other entity providing or offering a service over

the internet which permits persons under eighteen years of age to access, meet, congregate or communicate with other users for the purpose of social networking," other than "general e-mail services" (Correction Law § 168-a [16]). Facebook plainly falls within that definition. Consequently, e-STOP permits Facebook and other social networking sites to obtain the "internet identifiers" used by sex offenders and, with those internet identifiers, determine whether a sex offender is utilizing their services, prescreen or remove sex offenders from their services, and inform law enforcement of "potential violations of law and/or threats to public safety" (id. § 168-b [10]).

The legislature could have easily included among the mandatory disclosure provisions of Correction Law § 168-f (4) the "authorized internet entities" that a sex offender uses, such as Facebook. Presently, however, that statute does *not* require sex offenders to disclose to DCJS the authorized internet entities that they use.

For these reasons, the Appellate Division correctly concluded that Facebook is not an "internet identifier," and that the existence of a Facebook account—as opposed to the internet identifiers a sex offender may use to access Facebook or interact with other users on Facebook—need not be disclosed to DCJS pursuant to Correction Law § 168-f (4). As the People concede, this was the legal theory upon which the indictment was based. The indictment therefore accuses defendant of performing acts that "simply do not constitute a crime" and is jurisdictionally defective (People v Iannone, 45 NY2d 589, 600 [1978], citing People v Case, 42 NY2d 98 [1977]; see also People v Taylor, 65 NY2d 1, 5 [1985]). In light of that determination, we do not reach defendant's remaining arguments.

Accordingly, the order of the Appellate Division should be affirmed.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

Order affirmed.  Opinion by Judge Fahey.  Chief Judge DiFiore and Judges Rivera, Stein, Garcia, Wilson and Feinman concur.


Decided June 27, 2019

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*