People v Winston (2022 NY Slip Op 02080)





People v Winston


2022 NY Slip Op 02080


Decided on March 24, 2022


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: March 24, 2022
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Dianne T. Renwick
Troy K. Webber Jeffrey K. Oing Saliann Scarpulla Bahaati E. Pitt


Ind No. 2967/17 Appeal No. 15082 Case No. 2019-3113 

[*1]The People of the State of New York, Respondent,
v
Bryan Winston, Defendant-Appellant.



Defendant appeals from a judgment of the Supreme Court, New York County (Stephen M. Antignani, J.), rendered February 13, 2019, convicting defendant, after a jury trial, of assault in the third degree, attempted assault in the third degree, and two counts of aggravated harassment in the second degree, and imposing sentence.




Robert S. Dean, Center for Appellate Litigation, New York (Lena Janoda and David Klem of counsel), for appellant.
Cyrus R. Vance, Jr., District Attorney, New York (Franklin R. Guenthner and Alan Gadlin of counsel), for respondent.



Oing, J. 


The primary issue on this appeal is whether the trial court properly amended the indictment pursuant to CPL 200.70 at the conclusion of the trial by replacing in the accusatory clauses the offenses of assault in the second degree as a hate crime and attempted assault in the second degree as a hate crime with the lesser included offenses of assault in the third degree as a hate crime and attempted assault in the third degree as a hate crime in order to conform the indictment to the factual allegations set forth therein. We hold that this amendment prejudiced defendant, and therefore vacate his convictions for the lesser included offenses of assault in the third degree and attempted assault in the third degree.
On August 11, 2017, the grand jury filed an indictment charging defendant with assault in the second degree as a hate crime, attempted assault in the second degree as a hate crime, intimidating a victim or witness in the third degree, and two counts of aggravated harassment in the second degree. Regarding the hate crimes, the grand jury minutes demonstrate that the People presented evidence and charged the grand jury on Penal Law §§ 120.05(2) (assault in the second degree by means of a deadly weapon or a dangerous instrument) and 485.05(1)(a) (hate crimes) and specified that "[i]n this case our theory is that the dangerous instrument was the sign on top of the long pole." However, in its factual statements, the indictment did not allege that a deadly weapon or a dangerous instrument was used in the commission of either offense. It alleged:
"The defendant, in the County of New York, on or about July 9, 2017 with intent to cause physical injury to another person, caused such injury to such person and intentionally selected the person against whom the offense was committed and intended to be committed, in whole and in substantial part, because of a belief and perception regarding the race, color, national origin, ancestry, gender, religion, religious practice, age, disability and sexual orientation of said person, regardless of whether the belief and perception was correct.
"The defendant, in the County of New York, on or about July 28, 2017 with intent to cause physical injury to another person, attempted to cause such injury to such person and intentionally selected the person against whom the offense was committed and intended to be committed, in whole and in substantial [*2]part, because of a belief and perception regarding the race, color, national origin, ancestry, gender, religion, religious practice, age, disability and sexual orientation of said person, regardless of whether the belief and perception was correct."
Defendant's trial began on January 8, 2019. The prosecutor in her opening statement made references to a bike rental sign affixed to a PVC pipe as the instrument that defendant used to strike Akim Bari. She also read to the jury the above-quoted factual allegations in the indictment. Defense counsel did not mention the bike sign in his opening statement, but, instead, told the jury that defendant did not assault Bari. Neither the court nor counsel realized that there was an error in the indictment's factual allegations for the two hate crime counts. The relevant trial testimony is as follows. Bari testified that he and defendant worked as salespersons for the same bike rental company located near Central Park. Bari stood on the sidewalk near Central Park, holding a bike rental sign, and handed out flyers. Bari testified that in June 2017, after working with defendant for several months without incident, he told defendant that he was a Muslim in response to defendant's question, and defendant began cursing at him, using religiously discriminatory epithets. Bari testified that on July 9, 2017, defendant approached him and uttered slurs concerning his Muslim faith. The People elicited testimony from Bari that after some argument defendant struck him in the face with a bike rental sign affixed to a PVC pipe that he had been carrying. Bari testified that he sustained injuries, requiring medical attention. Bari testified that on July 28, 2017, defendant confronted him again. The People again elicited testimony from Bari that defendant struck him with the bike rental sign in the torso and then struck him a second time, causing him to fall to the ground, and that he sustained injuries requiring medical attention.
On January 10, 2019, towards the end of the People's case and prior to the charge conference, defense counsel pointed out for the first time that the factual statement of the indictment failed to allege that Bari's injuries were caused by a deadly weapon or a dangerous instrument with respect to the counts charging assault in the second degree as a hate crime and attempted assault in the second degree as a hate crime. The court indicated its willingness to hear whether defendant was prejudiced by the error, and asked defense counsel whether the counts should be dismissed or reduced to lesser included offenses. Counsel responded that a reduction of the counts was the likely remedy because that was made out in the factual statement of the indictment, but expressed his preference that the counts be dismissed. The court advised that it would research the issue and requested that the parties do the same.
The next day, on January 11, 2019, defense counsel advised the court that he did not believe the second[*3]-degree hate crimes could be amended pursuant to the language of CPL 200.70 governing amendments. The court explained that, in its view, the key issues were whether an amendment to add language to the indictment concerning use of a deadly weapon or a dangerous instrument would violate CPL 200.70, and, if so, whether the indictment could be amended to charge the lesser included offenses of assault in the third degree as a hate crime and attempted assault in the third degree as a hate crime. The People maintained that the indictment's omission of certain factual elements did not render the hate crime counts jurisdictionally defective. The court reserved its decision on the amendment and proceeded with the trial. At the conclusion of the People's case, defendant moved to dismiss the charges on the basis that the People failed to make out a prima facie case. The court denied the motion. The court then expressed its inclination to reduce the two second-degree hate crime charges to their lesser included offenses because the grand jury had properly voted out the hate crime charges, and the court had the authority to reduce a charge in an indictment to a lesser included offense. After the court asked the parties to set forth their positions on the amendment issue, defense counsel responded by moving to dismiss the second-degree hate crime offenses. The People asserted that charging the lesser included offense was appropriate because there was a reasonable view of the evidence that defendant had committed the lesser included offenses, the grand jury had voted out the greater offenses, and defendant suffered no prejudice from the error. The court again reserved decision. After the defendant rested, the court ruled that it would not amend the factual allegations in the indictment to support the second-degree hate crime offenses. Based on that ruling, the People moved to amend the accusatory clauses of counts one and two to charge the lesser included offenses of assault in the third degree as a hate crime and attempted assault in the third degree as a hate crime. Defense counsel objected and asked that the original two counts be dismissed and that the lesser included offenses not be submitted to the jury. The court granted the People's motion, holding that an amendment to reduce the original charges would not violate CPL 200.70 because the indictment's factual statements made out the lesser included offenses, the original charges were properly charged to the grand jury, the court was authorized to reduce a charge presented to the grand jury, and there was no evidence that defendant would be prejudiced by the amendment. The court then handwrote the changes to both counts in the indictment by striking "SECOND" and replacing it with "THIRD" and changing the statutory citation for both counts. Thereafter, both the prosecutor and defense counsel made references in their summations to the bike sign as the instrument that was used in the assault. The court charged the [*4]jury to consider, among other offenses, assault in the third degree as a hate crime and, alternatively, assault in the third degree. The court further instructed the jury to consider attempted assault in the third degree as a hate crime and, alternatively, attempted assault in the third degree. The court did not charge the jury on the two second-degree hate crimes.
On January 14, 2019, the jury convicted defendant of assault in the third degree, attempted assault in the third degree, and two counts of aggravated harassment in the second degree. The jury acquitted defendant of assault in the third degree as a hate crime, attempted assault in the third degree as a hate crime, and witness intimidation in the third degree. After the jury rendered its verdict, the court requested that the parties submit further briefing on whether amendment of the two second-degree hate crime counts was proper and advised that defendant might not be sentenced under the lesser included offenses. On February 13, 2019, at the beginning of the sentencing proceeding, the court noted that defense counsel's "position appears to be that he thinks that the manner in which [the amendment] was handled would have been appropriate based upon the case law," and the court adhered to its prior ruling. This appeal ensued.
Defendant argues that the court improperly amended the two second-degree hate crime counts of the indictment by reducing them to their lesser included offenses. Notwithstanding that evidence of a deadly weapon or a dangerous instrument was presented to the grand jury, namely, the bike rental sign, and that the grand jury was properly charged on the second-degree hate crimes, defendant asserts that the indictment failed to allege a material element of the second-degree hate crime offenses — that the injury was caused by the use of a deadly weapon or a dangerous instrument. Accordingly, defendant argues that the court should have dismissed those counts as jurisdictionally defective. We agree.
The essential purpose of a criminal indictment is to provide a defendant "with fair notice of the accusations made against him, so that he will be able to prepare a defense" (People v Iannone, 45 NY2d 589, 594 [1978]). This notice requirement is rooted in the New York State Constitution (NY Const, art I, § 6) and in statute (CPL 200.50; 200.30). CPL 200.50 requires that an indictment contain, among other things, a statement in each count that accuses the defendant of a "designated offense" and a "plain and concise factual statement in each count which . . . asserts facts supporting every element of the offense charged" (CPL 200.50[4], [7][a]). Thus, an indictment is jurisdictionally defective "if it fails to allege that a defendant committed acts constituting every material element of the crime charged" (People v Iannone, 45 NY2d at 600).
The instant indictment failed to allege, with respect to the two second-degree hate crimes, that defendant used a deadly weapon or a dangerous [*5]instrument in committing the crimes. Those counts were therefore jurisdictionally defective. The trial court properly declined to amend the indictment by adding the missing factual allegation, because amendment is expressly barred for the purpose of curing the "[l]egal insufficiency of the factual allegations" (CPL 200.70[2][b]; see People v Perez, 83 NY2d 269 [1994]; People v Sollars, 91 AD2d 909 [1st Dept 1983]). Thus, the court should have dismissed the second-degree hate crime counts (see CPL 210.25). Instead, the colloquy between the court and counsel demonstrates that this issue bedeviled them — the grand jury was presented with evidence of a dangerous instrument and defendant was on notice that the People's theory of the case was that a dangerous instrument was used to commit the assault, and the accusatory clauses of the indictment were correct, but the indictment's factual statements did not allege a dangerous instrument. The court granted the People's motion to amend by deleting the original charges in the accusatory clauses and replacing them with lesser included offenses on the grounds that the factual statements made out the lesser included offenses and that there was no evidence that defendant would be prejudiced by the amendment.
The People argue that the amendment was proper because it left intact the factual allegations that made out all the elements of the lesser included crimes and therefore the indictment was sufficient to sustain those charges. They argue that the amendment of only the accusatory clauses of the indictment was merely a technical correction of a "matter[] of form" under CPL 200.70(1). Moreover, the People contend that the amendment did not change the theory of the prosecution or otherwise prejudice defendant, because, as the court correctly observed, the factual allegations comported with the evidence before the grand jury and defendant was therefore on notice that the People intended to prove he had committed an assault and an attempted assault as hate crimes, albeit of greater degrees.
These arguments miss the mark. The cases relied upon by the People are procedurally distinguishable from this one (see e.g. People v Gouyagadosh, 295 AD2d 246 [1st Dept 2002]; People v Green, 250 AD2d 143, 145 [3d Dept 1998], lv denied 93 NY2d 873 [1999]; People v Fernandez, 269 AD2d 184, 185 [1st Dept 2000], lv denied 95 NY2d 796 [2000]; People v Rothman, 117 AD2d 535, 535-536 [1st Dept 1986], affd 69 NY2d 767 [1987]; People v Miller, 143 App Div 251, 256 [1st Dept 1911], affd 202 NY 618 [1911]). None of these cases involves a circumstance in which an amendment occurs after trial on an offense, and then replacing that offense with a lesser included offense. An indictment may be amended to correct "matters of form, time, place, names of persons and the like" (CPL 200.70[1]). An amendment must not "change the theory or theories of the prosecution as reflected in the evidence before the grand jury . . . or otherwise tend to prejudice [*6]the defendant on the merits" (CPL 200.70[1]). The manner in which the amendment was accomplished in this case plainly prejudiced defendant (see People v Seignious, __ AD3d __, 2022 NY Slip Op 00948, *4 [1st Dept 2022] [defendants have a constitutional right to notice of the charges on which they will be tried]).
Next, the amendment did not merely correct a simple "misnomer" of the offense (see People v Rodriguez, 97 AD3d 246, 250-252 [1st Dept 2012], lv denied 19 NY3d 1028 [2012]). There can be no dispute that a trial court is authorized to charge lesser included offenses in addition to the greater offense (see CPL 300.50). But that is not what occurred here. The People presented their case from commencement to conclusion as one involving a dangerous instrument, and defendant was on notice of that theory and defended against that claim. Assuming, arguendo, that defendant was on notice during the trial proceedings that the court would charge the jury with the lesser included offenses of third-degree hate crimes and third-degree assault, he was never on notice at any point during the trial that at the conclusion of the trial the greater offense of the original two counts of the second-degree hate crimes would be deleted and would be replaced with the lesser included offenses of two counts of third-degree assault and attempted assault as hate crimes and that the lesser included offenses of third-degree assault and attempted assault would also be charged to the jury. In fact, notice could not have been given, because the indictment's deficiency was not discovered until one day before the trial concluded. This unorthodox correction is not the kind of procedure sanctioned under CPL 200.70 or 300.50. The amendment was therefore not a mere correction of a "misnomer" of the offense in the accusatory clauses of the indictment (see People v Perez, 83 NY2d at 274-276; see e.g. People v Seignious, 2022 NY Slip Op at *4).
Finally, defendant was prejudiced by the amendment. The People's theory before the grand jury was that Bari's injuries were caused by the use of a dangerous instrument, i.e., the bike rental sign. The prosecutor in her opening statement made references to the bike rental sign. She did so in her summation even after the court deleted the original second-degree hate crimes and replaced them with third-degree hate crimes. Further, on the People's case, the prosecutor elicited testimony from Bari to support this theory. Thus, the People tried the case from inception to conclusion, and defendant mounted a defense, on the theory that a deadly weapon or a dangerous instrument was used in the commission of the hate crimes. On the last day of the trial, however, the court amended the indictment and charged the jury with variations of third-degree assault, which do not require proof of the existence of a deadly weapon or a dangerous instrument. Thus, after hearing evidence of a dangerous instrument throughout the trial, the jury received instructions [*7]that did not require it to find that the People had proven the existence of a dangerous instrument beyond a reasonable doubt to convict defendant of the third-degree hate crimes or the third-degree assault. This result was an impermissible change in the theory of the prosecution. While the People no longer had to prove that defendant used a deadly weapon or a dangerous instrument to injure Bari, the jury, during its deliberation of the third-degree offenses, which only required a finding of intent to injure and cause physical injury, was more likely than not unduly influenced to defendant's detriment by the testimony about the bike rental sign.
As the court should not have permitted the amendment pursuant to CPL 200.70(1), the conviction for assault in the third degree and attempted assault in the third degree must be vacated and those counts dismissed. The arguments concerning weight of the evidence and legal sufficiency of those counts are rendered moot by this determination.
Defendant also argues that the verdict of guilty on two counts of aggravated harassment in the second degree is both against the weight of the evidence and based on legally insufficient evidence. We find no basis for disturbing the jury's credibility determinations. The evidence supports the religious bias-related element of these counts (see Penal Law § 240.30[3]). Defendant argues further that this verdict is inconsistent with the verdict of not guilty on the greater offenses of assault in the third degree as a hate crime and attempted assault in the third degree as a hate crime (Penal Law §§ 120.00[1]; 110.00; 485.05[1][a]). We reject this argument.
The hate crime charges require a showing that a defendant "intentionally select[ed]" a victim "in whole or in substantial part because of a belief" about that person's religious practice (Penal Law § 485.05[1][a]). The charge of aggravated harassment in the second degree, however, requires a showing that a defendant committed that crime "because of a belief or perception" regarding the victim's religious practice (Penal Law § 240.30[3]), and "[a]ny [religious practice-related] epithets are circumstantial evidence that a defendant's actions were motivated by [religious practice] prejudice" (People v Pirozzi, 237 AD2d 628, 630 [2d Dept 1997] [internal quotation marks omitted], lv denied 90 NY2d 909 [1997]). Although the jury evidently found that defendant did not single Bari out because of his faith when it acquitted him of the two hate crime charges, the jury also heard Bari consistently testify that defendant engaged in harassing verbal behavior against him because of his religion. Thus, the aggravated harassment convictions are not inconsistent with the hate crime acquittals.
Accordingly, the judgment of the Supreme Court, New York County (Stephen M. Antignani, J.), rendered February 13, 2019, convicting defendant, after a jury trial, of assault in the third degree, attempted assault in the third degree, and two counts of [*8]aggravated harassment in the second degree, and sentencing him to an aggregate term of one year, should be modified, on the law, to vacate the conviction for assault in the third degree and attempted assault in the third degree, and dismiss those counts of the indictment, with leave to resubmit, and otherwise affirmed.
Judgment Supreme Court, New York County (Stephen M. Antignani, J.), rendered February 13, 2019, modified, on the law, to vacate the conviction for assault in the third degree and attempted assault in the third degree, and dismiss those counts of the indictment, with leave to resubmit, and otherwise affirmed.
Opinion by Oing, J. All concur.
Renwick, J.P., Webber, Oing, Scarpulla, Pitt, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: March 24, 2022