■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v THOMAS BRAY, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Kings County (Goldstein, J.), rendered February 9, 1988, convicting him of criminal possession of a weapon in the third degree, upon his plea of guilty, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's motion which was to suppress physical evidence.

Ordered that the judgment is affirmed.

Following a *Mapp* hearing, at the conclusion of which that branch of the defendant's omnibus motion which was to suppress physical evidence was denied, the defendant agreed to withdraw his previously entered plea of not guilty and to plead guilty to the only count of the indictment, criminal possession of a weapon in the third degree. At the plea allocution, the court, after ascertaining that the defendant had sufficient time to consult with his attorney, inquired of the defendant as follows: "Do you understand that in pleading guilty you're giving up constitutional rights that you have, for instance, the right to remain silent, the right to have a trial by jury or the Court, whichever you would prefer, the right to confront and cross-examine witnesses, the right to produce any witnesses you might wish to produce, the right to make the People prove you guilty beyond a reasonable doubt, your right to have this Court give you written findings of fact and conclusions of law in reference to the Mapp and Dunaway hearings that you have; you are waiving your right to go to the Appellate Division or any other court in reference to that hearing; do you understand that"?

The defendant responded affirmatively and, after a sufficient factual predicate was established, his plea was accepted and he was adjudicated a persistent violent felony offender. The promised sentence of six years' to life imprisonment was subsequently imposed.

On appeal the defendant challenges the suppression court's determination. The People argue that the defendant should be precluded from doing so because he waived his right to appellate review as a condition of his guilty plea. We conclude that, upon this record, the defendant's purported waiver of his right to appeal from the denial of his motion to suppress was ineffectual and that the defendant is entitled to appellate review of that determination.

It is now well established that a defendant may waive both his statutory right to seek review of an adverse determination of a suppression motion *(see, People v Williams,* 36 NY2d 829), and the right to appeal generally *(see, People v Smith,* 74 NY2d 1) as part of a negotiated plea bargain. However, as with waivers in general, in order to be enforceable the waiver "must not only be voluntary but also knowing and intelligent. * * * As with plea and sentence bargains generally, prudence suggests that the terms and conditions of the agreement and the defendant's understanding of them, be placed upon the record to facilitate appellate review" *(People v Smith,* 74 NY2d 1, 11, *supra).* This standard has not been met at bar. The defendant was never specifically informed that, in addition to the panoply of rights he was automatically waiving as a consequence of his guilty plea, acceptance of his plea was being further conditioned upon his waiver of his statutory right to seek review of the suppression court's determination, a right which, absent such waiver, would survive a guilty plea *(see,* CPL 710.70 [2]; *cf., People v Smith,* 74 NY2d 1, *supra; People v Williams,* 143 AD2d 162; *People v Barnett,* 136 AD2d 555). Indeed, the record does not contain any indication that the parties even discussed the issue, or that the prosecutor intended the waiver to be a condition of the plea offer *(cf., People v Williams, supra; People v Smith,* 133 AD2d 864). It would appear that the condition here was imposed pro forma by the plea court, and it is not clear that the defendant understood that his plea of guilty was intended to preclude him from raising the propriety of the hearing court's determination to deny suppression on appeal. In this regard plea and sentencing courts should take heed of the following advice, recently imparted by the Court of Appeals: "[I]n overseeing the process, the court must also consider the reasonableness and the appropriateness of the bargain *(see, Santobello v New York,* 404 US 257, 262, *supra; Brady v United States,* 397 US 742, 748-749; *People v Farrar,* 52 NY2d 302, 306, *supra)* and its effect on 'the integrity of the criminal justice system' before accepting it *(People v McConnell,* 49 NY2d 340, 346, *supra).* Manifestly, an unfair bargain or one coerced to conceal error or misconduct does not meet these standards and is subject to vacatur on direct appeal or by appropriate posttrial proceedings" *(People v Smith,* 74 NY2d 1, 11, *supra).*

The dissent's reliance upon *People v Ricciardi* (121 AD2d 407) and *People v McGourty* (125 AD2d 417) is misplaced. In *Ricciardi (supra),* the defendant, on the record, knowingly and voluntarily withdrew all his pretrial motions, pending and

decided. Similarly, in *McGourty (supra),* the defendant un-equivocally waived his right to seek appellate review of his suppression motion. Under those circumstances, this court held that the defendants' claims on appeal that their waivers were not knowing were unpreserved for appellate review because the defendants never moved to vacate their pleas or to set aside their convictions on that basis. Here, in contrast, the insufficiency of the defendant's purported waiver is apparent from the record itself and no further motion was necessary to preserve this issue for appellate review.

On the record before us, the evidence is insufficient to support the conclusion that the defendant agreed to waive his right to appeal from the denial of his motion to suppress with full appreciation of its consequences *(cf., People v Seaberg,* 74 NY2d 1), and accordingly, the defendant is entitled to a review of the merits of the suppression court's determination.

Upon such review, we conclude that the police conduct in stopping the defendant and his companion was not unlawful *(see, People v Carrasquillo,* 54 NY2d 248; *People v Cantor,* 36 NY2d 106). Moreover, the evidence adduced at the hearing supports the court's conclusion that the defendant's act of drawing and subsequently discarding the gun, "was not a direct and spontaneous response to the detention, but was rather an independent calculated act which was not provoked by the police activity and was thus attenuated from it *(see, People v Boodle,* 47 NY2d 398, *cert denied* 444 US 969; *People v Townes,* 41 NY2d 97; *cf., People v Wilkerson,* 64 NY2d 749)" *(People v Payne,* 128 AD2d 559, 560). Since the gun was not seized as a consequence of the police conduct complained of, suppression thereof was not warranted *(see, Wong Sun v United States,* 371 US 471, 487). Bracken, J. P., Brown and Harwood, JJ., concur.

Rosenblatt, J., dissents and votes to dismiss the appeal, with the following memorandum, in which Kooper, J., concurs: I dissent insofar as the majority entertains a review of the denial of defendant's motion to suppress. The defendant, for a substantial inducement upon a negotiated plea and promised sentence, waived the right to seek review of the adverse suppression ruling on an appeal from the judgment of conviction. Accordingly, and because defendant raises no other points, I would dismiss the appeal and not reach the suppression issue *(People v Roberts,* 152 AD2d 678; *People v Jackson,* 142 AD2d 689).

Further, I find the majority position irreconcilable with

*People v Ricciardi* (121 AD2d 407) and *People v McGourty* (125 AD2d 417), in which we held that a defendant who contends that he did not knowingly waive his right to seek appellate review of an adverse suppression ruling, but neither moved to vacate the plea or set aside the conviction, leaves the suppression issue unpreserved for appellate review. As for review in the exercise of our interest of justice jurisdiction, the defendant at bar is not seeking it, the majority is not invoking it, and there is no basis for it on this record. Nevertheless, I would dismiss the appeal, not necessarily in reliance upon *Ricciardi (supra)*—which involved the withdrawal of the suppression motion, the functional equivalent of waiving the right to appellate review of the suppression order—and *McGourty (supra)*, but, rather, on the strength of the defendant's waiver.

If there is any doubt as to the sufficiency of the waiver, it is dispelled by *People v Seaberg* (74 NY2d 1). The defendant Seaberg argued that his waiver of his right to appeal was ineffective. The Court of Appeals held that although Seaberg "did not personally enter into the court's colloquy with his lawyer" when the details of the plea were stated, and that the plea court "should have required him to state his understanding and acceptance of them" *(People v Seaberg, supra,* at 11), he nevertheless was properly found to have agreed to the conditions, with full appreciation of the consequences. I compare the circumstances in *Seaberg* with ours, and find that the defendant at bar participated personally in the waiver colloquy, and that everything was done with clarity and resolve, thereby rendering this colloquy more convincing than the one upheld in *Seaberg*. The record at bar shows that immediately before the plea was tendered, the defendant, a persistent felony offender, told the court that he had conferred with his attorney, who stood by his side. The court asked the defendant if he had enough time to do so, and the defendant said that he did. The court spelled out the terms of the plea (as quoted by the majority), identified the *Boykin v Alabama* (395 US 238) rights, and then asked the defendant: "[Y]ou are waiving your right to go to the Appellate Division or any other court in reference to that *[Mapp/Dunaway]* hearing; do you understand that?" To which the defendant stated, "yes." The court then pressed the point: "You're giving up all these rights, do you understand that?" To which the defendant again replied, "Yes, I do". I see no ambiguity in this, no confusion or uncertainty, and no basis to disengage the defendant from the consequences of a knowing and intelligent plea and waiver.

Beyond that, I think it unwise and destabilizing to allow a party to undo the consequences of clear-headed, ably counseled, strategic negotiations, in which he agreed to waive certain benefits and receive a minimum sentence amounting to less than one fourth of what was maximally authorized if he were convicted as charged.

Guilty pleas account for the vast majority of criminal case resolutions and, under existing circumstances, it cannot be any other way. Each side strategically relinquishes opportunities in favor of finality, so that sentencing and plea concessions or inducements on the State's part correspond to various waivers on the part of the defense. The waivers are necessarily almost as numerous as the various rights afforded to the accused. By pleading guilty, a defendant waives all nonjurisdictional defects, and as such, it should mark "the end of a criminal case, not a gateway to further litigation" *(People v Taylor,* 65 NY2d 1, 5). A guilty plea forecloses a host of challenges that would otherwise be reviewable as a matter of constitutional, statutory, or decisional law, including challenges to Grand Jury proceedings *(People v Martin,* 145 AD2d 440); the interpretation or application of a statute *(People v Levin,* 57 NY2d 1008); the sufficiency of evidence before the Grand Jury *(People v Dunbar,* 53 NY2d 868); the denial of a severance motion *(People v Grant,* 140 AD2d 623); the denial of a motion for a separate trial *(People v Smith,* 41 AD2d 893); the factual specificity of an indictment *(People v Pollay,* 145 AD2d 972); a motion to disqualify the prosecutor *(People v Cole,* 152 AD2d 851; *People v Manzo,* 99 AD2d 817); an adverse *Sandoval* ruling *(People v Johnson,* 141 AD2d 848); a claim of statutory previous prosecution *(People v Prescott,* 66 NY2d 216, *cert denied* 475 US 1150); a claim of statutory immunity *(People v Sobotker,* 61 NY2d 44); an adverse *Molineux* ruling *(People v Winchenbaugh,* 120 AD2d 811); a Statute of Limitations claim *(People v Dickson,* 133 AD2d 492); an alleged constitutional presumption in a statute *(People v Thomas,* 53 NY2d 338); a claim of selective prosecution *(People v Rodriguez,* 55 NY2d 776); a claim of preindictment prosecutorial misconduct *(People v Di Raffaele,* 55 NY2d 234); the statutory right to speedy trial *(People v O'Brien,* 56 NY2d 1009); a factual basis for the particular lesser crime confessed *(People v Crespo,* 153 AD2d 573); a challenge to the arraignment proceedings *(People v Meachem,* 50 AD2d 953); the improper omission to file a bill of particulars *(People v Hendricks,* 31 AD2d 982); objections to the form of the indictment *(People v Iannone,* 45 NY2d 589); the illegality of the arrest *(People v*

*Grant,* 16 NY2d 722, *cert denied* 382 US 975); the lawfulness of a confession that was never challenged *(People v Nicholson,* 11 NY2d 1067); rulings on discovery motions *(People v Cusani,* 153 AD2d 574); denial of a motion to dismiss charges in the interest of justice *(People v Macy,* 100 AD2d 557); an order denying an application for permission to make a late motion to suppress *(People v Petgen,* 55 NY2d 529); claims under *Batson v Kentucky* (476 US 79) as to discriminatory use of peremptory challenges *(People v Green,* 146 AD2d 281, *lv granted* 74 NY2d 740); claims as to the denial of the opportunity to testify before the Grand Jury *(People v Heady,* 151 AD2d 844); and ex post facto claims relating to evidentiary matters *(People v Latzer,* 71 NY2d 920).

The few exceptions to this rule confirm the solemnity and finality of the guilty plea, especially when negotiated. It is only where the issue challenged on appeal goes to the jurisdiction of the court or to the very heart of the process that it may be raised notwithstanding a guilty plea *(People v Taylor,* 65 NY2d 1, 5), as where the defendant is arguably an incompetent *(People v Armlin,* 37 NY2d 167; *People v Kennedy,* 151 AD2d 831); an amnesiac *(People v Francabandera,* 33 NY2d 429, 434, n 2), or where the case raises other circumstances such as a challenge to the constitutionality of the statute under which a defendant was charged *(People v Lee,* 58 NY2d 491); an indictment that does not spell out criminality *(People v Iannone,* 45 NY2d 589, 600, *supra; People v Case,* 42 NY2d 98; *People v Koffroth,* 2 NY2d 807); considerations involving constitutional speedy trial claims *(People v Blakley,* 34 NY2d 311; *cf., People v Rodriguez,* 50 NY2d 553); constitutional double jeopardy issues *(Menna v New York,* 423 US 61); or a prosecution based on knowingly false testimony *(People v Pelchat,* 62 NY2d 97; *see also, People v Ortiz,* 127 AD2d 305; *Miller v Angliker,* 848 F2d 1312, *cert denied* — US —, 109 S Ct 224 *[Brady* claim]; *People v Recupero,* 73 NY2d 877 [joint representation claim]).

In each of these instances a postplea challenge is allowed because the proceedings had been essentially hollow, which is to say, lacking in jurisdiction, seriously befouled, or marked by the kind of governmental overreaching that renders them unpalatable. I stress this, in juxtaposition to the case at bar, where the right to appellate review is statutory only, and where this defendant, for a benefit, and in contrast to the defendants in the above-cited cases, expressly renounced the right to appeal.

The foregoing list of waivers is lengthy, and probably incom-

plete at that. It has never been held that each of these rights must be identified, articulated, and waived. All rights are not created equal. There is a hierarchy about them. Some are of constitutional dimensions, while others are statutory, decisional, or regulatory. It follows that the meticulousness of the waiver of any right should correspond to the importance of that right.

The constitutional right to trial by jury is so fundamental (US Const 6th Amend; *Duncan v Louisiana,* 391 US 145; NY Const, art I, § 2; *People v Ricardo B.,* 73 NY2d 228, 232) that in New York its waiver and the ensuing bench trial must entail a document in writing, signed by the defendant in open court (CPL 320.10 [2]). Not even a wholly informed oral waiver will do *(People v Meyer,* 56 AD2d 937). And yet, upon a guilty plea, there is no requirement that the defendant be informed of that right, let alone that the defendant specifically articulate its waiver *(People v Harris,* 61 NY2d 9, 18).

So, too, the privilege against self-incrimination is guaranteed by the Fifth and Fourteenth Amendments of the US Constitution *(Malloy v Hogan,* 378 US 1) and by the State Constitution (NY Const, art I, § 6), and yet, a guilty plea may be validly tendered and accepted without a specific recitation and explicit waiver of this right *(People v Harris, supra).* Similarly, the right to be present at the trial (NY Const, art I, § 6; US Const 6th Amend; CPL 260.20, 340.50; *People v Parker,* 57 NY2d 136, 139; *People v Edmonds,* 151 AD2d 829); the right to be confronted by witnesses *(Pointer v Texas,* 380 US 400); and the right to subpoena one's own witnesses *(Washington v Texas,* 388 US 14) are fundamental guarantees. Nevertheless, when a defendant knowingly and intelligently pleads guilty, there is no requirement that there be an express incantation of these rights and waivers.

This is not to say that some rights and waivers are demeaned for the sake of expediency. On the contrary, most plea colloquys, as the one in this case, do address the rights involved. Certainly, it is a preferred procedure, even though it may not be obligatory under *People v Harris* (61 NY2d 9, *supra).* The waiver of the right to seek appellate review of an adverse suppression ruling followed by a guilty plea should not transcend rights that are constitutional in nature *(People v Jandrew,* 101 AD2d 90, 92).

Our State's highest court has held, time and time again, that the guilty plea is not to be judged by ritualistic or formalistic standards. The validity of the plea is measured on

a case-by-case basis, under principles of clarity, common sense, and all of the surrounding circumstances that bear on the rationality of the agreement, including, of course, the active participation of counsel *(People v Nixon,* 21 NY2d 338, *cert denied sub nom. Robinson v New York,* 393 US 1067; *People v Francis,* 38 NY2d 150; *People v Harris,* 61 NY2d 9, *supra).*

The defendant relies on CPL 710.70 (2) in order to gain appellate review. An analysis of that section should make it evident that its benefits may be waived, on the basis of a record as complete as the one at bar.

The suppression apparatus was developed statutorily, in 1962, with the passage of former Code of Criminal Procedure § 813-c. The enactment (L 1962, ch 954) was declared to have furnished a framework for operation of the exclusionary rule fostered by *Mapp v Ohio* (367 US 643; Governor's mem on approving L 1962, ch 954, 1962 NY Legis Ann, at 391). Appellate review is a statutory right *(Jones v Barnes,* 463 US 745, 751; *Matter of Mitchell,* 40 NY2d 153, 157; *People v Corti,* 88 AD2d 345, 348), and from the inception, the appellate courts, in reviewing suppression orders, have cited statutory rather than constitutional commands *(People v Williams,* 40 AD2d 586; *People v Smith,* 41 AD2d 893; *People v Torres,* 45 AD2d 185). When the Criminal Procedure Law supplanted the Code of Criminal Procedure, Code of Criminal Procedure § 813-c was recodified as CPL 710.70 (2), where it has since lodged, and has been invoked frequently as the basis for appellate review *(see, e.g., People v Valente,* 50 AD2d 908; *People v Laino,* 115 AD2d 663, *lv denied* 67 NY2d 763; *People v Honiker,* 144 AD2d 184).

The right to appellate review of an adverse suppression ruling following a guilty plea is not constitutionally compelled, but is New York State's own, and somewhat unusual, legislative creation *(Lefkowitz v Newsome,* 420 US 283; *cf.,* Fed Rules Crim Pro, rule 11 [a] [2]; *United States v Benavides,* 793 F2d 612, *cert denied* 479 US 868; *United States v Carrasco,* 786 F2d 1452). Indeed, a canvass of cases on a nationwide basis reveals that in most jurisdictions a plea of guilty will usually foreclose consideration of suppression claims (Annotation, *Unlawful Search and Seizure—Waiver,* 20 ALR3d 724).

Recognizing that there is nothing in *Mapp (supra)* or in the Federal or State Constitutions that gives a defendant a right to have an appellate court review the propriety of a suppression ruling in the context of a guilty plea, this court once went so far as to suggest that CPL 710.70 (2) be repealed, in

that its presence was thought to be an unnecessary burden on the administration of justice *(People v Navarro,* 61 AD2d 534).

It is in this background, under the well-established test described in *People v Seaberg* (74 NY2d 1, *supra),* and cited by the majority, that we look to the appropriateness and reasonableness of the plea, in light of the charges, the defendant's age, and his experience. I find that the plea and waiver reveal no unfairness, no coercion, and no lack of understanding. As a persistent violent felony offender, the defendant had obviously been through this process before and was facing 25 years' to life imprisonment (Penal Law § 70.08 [3] [c]; § 265.02) as a member of the most dangerous recidivist class of criminals known under New York law.

He negotiated and bargained for an agreement by which he would receive the absolute minimum term of imprisonment allowable under Penal Law § 70.08 (3) (c), which is six years to life. Three weeks later, he was sentenced in the manner and to the term promised. In the interim, he made no motion to withdraw the plea, and expressed no discontent with its terms *(People v McGourty,* 125 AD2d 417, *supra).*

On this record, it is unimaginable that he did not know exactly what he was doing, what he was gaining, and what he was giving up. The colloquy is in marked distinction to such cases as *People v Roach* (62 AD2d 1157, *revd on other grounds* 47 NY2d 777), where there was no indication of any waiver by an 18-year-old defendant, and *People v Ayala* (149 AD2d 519), where the record reveals confusion on the defendant's part as to what was or was not being waived *(see also, People v Laino,* 115 AD2d 663, *supra; People v Cox,* 71 AD2d 798).

As Justice Simons stated, writing for a unanimous court in *People v Seaberg* (74 NY2d 1, 10, *supra):* "Moreover, the People need not particularize 'some legitimate State interest' to justify conditioning a plea bargain on defendant's waiver of the right to appeal *(see, People v Ventura,* 139 AD2d 196, 203). The validity of the waiver is supported by the interests supporting plea bargains generally". There is no doubt that it was more than amply supported here. Considering that Seaberg waived his *right to appeal per se,* the CPL 710.70 (2) waiver of the right to seek appellate review of the adverse suppression ruling on appeal from the judgment in this case is at least as compelling, both legally and factually.