THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
BRADFORD J. GERBER, Appellant.

Second Department, September 14, 1992

254

**APPEARANCES OF COUNSEL**

*Thomas J. O'Neill* and *Peter L. Maroulis,* Poughkeepsie

*(William O. Bittman* of counsel), for appellant. (One brief filed.)

*William V. Grady, District Attorney,* Poughkeepsie *(Alfred T. Tallakson* of counsel), for respondent.

### OPINION OF THE COURT

SULLIVAN, J. P.

■ The defendant, having been convicted of manslaughter in the second degree upon a negotiated guilty plea, advances several claims on this appeal regarding alleged police and prosecutorial misconduct. He contends that these instances of purported misconduct raise issues which survive his guilty plea and which mandate the dismissal of the indictment against him. We disagree with the defendant and take this opportunity to discuss the requirements for, as well as the ramifications of, the entry of a valid plea of guilty.

### I.

On April 26, 1990, the defendant, Bradford J. Gerber, was indicted for the crime of manslaughter in the second degree in that "on or about the 30th day of December, 1989, [he] recklessly caused the death of another [named] person * * * by shooting him with a rifle". The defendant, who has never denied committing the shooting, was arrested shortly after the incident and allegedly made voluntary statements to the New York State Police. According to the prosecution, those statements indicated that, after drinking at a local tavern, the defendant and three friends, one of whom was the victim, went to the defendant's residence on the morning of December 30, 1989. Subsequent to their arrival, they drank some beer and the defendant additionally used cocaine. As the group apparently engaged in horseplay, the defendant grabbed a seven-millimeter rifle which was leaning against the wall, examined it and satisfied himself that it was not loaded, and then pointed it at the victim and pulled the trigger. The rifle discharged, mortally wounding the victim and thus precipitating the defendant's arrest and indictment.

In a series of motions, the defendant claimed that the indictment should be dismissed in the furtherance of justice *(see,* CPL 210.40) because of pervasive misconduct on the part of the police and the prosecutor. These alleged instances of misconduct, sharply disputed by the People, consisted of the following: (1) a New York State Police Senior Investigator

listened to portions of an audiotaped interview between the defendant and his attorney on the date of the arrest after discovering that the attorney had left his briefcase, containing a tape recorder and audiotape, at police headquarters, (2) the police test-fired (and thereby altered) a "live" round of ammunition found in the rifle before the defense counsel was formally notified of its existence and had an opportunity to examine it, (3) the police improperly "staged" and exhibited to the Grand Jury a photograph of the rifle depicting it with the bolt drawn back to reveal two cartridges inside, even though the design of the weapon was such that the spent cartridge would be ejected from the weapon automatically once the bolt was drawn back, and (4) during the Grand Jury proceedings, a New York State Police Investigator who was not qualified as a firearms expert answered hypothetical questions regarding the defendant's operation of the rifle.

The County Court held an evidentiary hearing on these allegations of misconduct. Subsequent to the hearing, the court issued an amended decision and order which reviewed the testimony of the hearing witnesses and which denied the defendant's motion to dismiss the indictment or to bar the People from presenting any evidence at trial regarding the presence of the second, "live" bullet in the rifle. Specifically, the court found that the Senior Investigator's conduct in deliberately listening to a brief portion of the taped interview between the defendant and his attorney was "improper" and "inappropriate", notwithstanding the Senior Investigator's testimony that he did so only because he suspected that the tape recorder was voice activated and thus might have recorded police conversations.[1] However, the court also found a total lack of evidence that the defendant suffered any prejudice as a result of the incident; hence, it determined that the drastic remedy of dismissal was unwarranted.

Similarly, the court found the defendant's other claims of misconduct unavailing. With regard to the test-firing of the "live" cartridge removed from the rifle, the court found that the defense counsel was on notice of the existence of this second bullet prior to its destruction by virtue of his receipt of a police photograph of the rifle showing that it contained one spent and one "live" cartridge. Moreover, the court deter-

1. A Grand Jury investigation of the entire "tape recorder incident" was conducted prior to the misconduct hearing and no charges were returned against any police personnel.

mined that police testimony indicating that the "live" round was in the rifle when it was recovered from the crime scene was credible, and that "no evidence was presented to indicate that the live cartridge in dispute was other than in the rifle when it was fired by the defendant". Hence, the court refused to bar evidence of the bullet, but reminded the defense counsel that he was "free to explore this issue at trial". Likewise, the court rejected the claim that a photograph of the weapon had been "staged," finding that the police had not acted improperly in manually preventing the ejection of the spent cartridge from the rifle so as to accurately depict the contents of the weapon at the time it was recovered. Furthermore, the court noted that while a State Police Investigator who was not a firearms expert had given opinion testimony before the Grand Jury regarding the operation of the rifle, "the [Grand] [J]ury was free to accept or reject his conclusion and could draw their own inferences and conclusions concerning the weapon and defendant's recklessness". Additionally, since the Investigator had received extensive firearms training, was skilled in the use of firearms, and had photographed and examined the rifle in this case, the court found that "[i]t was not entirely improper for [the Investigator] to express his opinion as to the proper inference to be drawn from a given set of facts as an aid to the Grand Jury". Accordingly, to the limited extent that the court found inappropriate conduct on the part of law enforcement officials, it determined that there was not "such exceptionally serious misconduct as to warrant a dismissal of this indictment".

Thereafter, on March 28, 1991, the defendant appeared in the County Court and, pursuant to a negotiated agreement with the People, offered to plead guilty to the charge of manslaughter in the second degree in exchange for a promised sentence of two to six years imprisonment. The defendant indicated to the court that he had received sufficient time and opportunity to discuss the matter with his counsel and with his family, that he had consulted with his attorney regarding all of his options and potential defenses, and that he was satisfied with counsel's representation. The defendant further stated that he had not recently consumed any alcohol or drugs, that he was not under professional care for any emotional problems, that he had not been threatened or forced into pleading guilty, that the only promise made to him concerned the negotiated sentence, that he was offering to plead guilty "willingly, knowingly, and voluntarily", and that

he was in fact guilty of the crime as charged. He further acknowledged and waived the right to remain silent, to have a jury or Bench trial, to have the prosecution prove his guilt beyond a reasonable doubt, to confront and cross-examine prosecution witnesses, and to call witnesses and to testify on his own behalf. Additionally, the defendant acknowledged that a guilty plea was equivalent to a conviction after trial and that his plea to a felony could subject him to an enhanced sentence on any future convictions. The defendant then described the crime, stating that he had been "fooling around" with the rifle and that he shot and killed the victim. He admitted that "I thought [the weapon] wasn't loaded, but I obviously didn't check it well enough", and he agreed that his failure to properly check the weapon was due to his ingestion of cocaine and alcohol prior to the shooting. The court accepted the guilty plea.

On May 20, 1991, the defendant appeared for sentencing and received the promised term of two to six years' imprisonment. He did not seek to withdraw his plea, nor did he voice any objection during the proceedings. This appeal ensued.

## II.

We begin with the familiar observation that the importance of plea bargaining to our system of justice cannot be overstated. Indeed, it has become an indispensable and generally beneficial component of day-to-day operations in New York's courts of criminal jurisdiction. As our Court of Appeals recently observed in *People v Seaberg* (74 NY2d 1, 7): "Plea bargaining is now established as a vital part of our criminal justice system. Indeed, as we recognized years ago, tne volume of criminal prosecutions is so great that if full trials were required in each case New York's law enforcement system would collapse *(see, People v Selikoff,* 35 NY2d 227, 233, *cert denied* 419 US 1122). Certainly nothing has happened since then to cause us to change that observation. The judicial acceptance of plea bargaining, however, rests upon broader policy considerations. In addition to permitting a substantial conservation of prosecutorial and judicial resources, it provides a means where, by mutual concessions, the parties may obtain a prompt resolution of criminal proceedings with all the benefits that enure from final disposition. The plea bargain, or negotiated sentence, enables the parties to avoid the delay and uncertainties of trial and appeal and permits swift

and certain punishment of law violators with sentences tailored to the circumstances of the case at hand *(see generally, Santobello v New York,* 404 US 257, 261; *People v Selikoff,* 35 NY2d 227, 233-235, *supra)."*

However, it is well settled that plea bargaining serves the ends of justice only when it is the product of a free and informed decision on the part of the accused. Thus, "the final and prompt conclusion of litigation is an important goal of public policy in criminal as well as civil litigation, provided always that the settlement is fair, free from oppressiveness, and sensitive to the interests of both the accused and the People" *(People v Seaberg, supra,* at 8). To ensure that a given plea bargain is made in an atmosphere of fundamental fairness, the court must assume the duty of ascertaining whether the guilty plea is voluntary, knowing, and intelligent, by making relevant inquiry on the record. In doing so, the court is not bound by "a ritualistic uniform procedure" *(People v Harris,* 61 NY2d 9, 17; *see, People v Moissett,* 76 NY2d 909). Rather, it is enough that, in the context of the particular facts of the case, the court's inquiry results in a record demonstrating the willing and intelligent relinquishment of rights by the pleading defendant *(see, People v Harris, supra).*

To be sure, "[t]he pleading process necessarily includes the surrender of many guaranteed rights" *(People v Seaberg, supra,* at 7). Among these are the privilege against compulsory self-incrimination, the right to a trial by jury, and the right to confront one's accusers *(see, Boykin v Alabama,* 395 US 238; *People v Taylor,* 65 NY2d 1; *People v Harris, supra).* These rights, as well as others normally associated with a criminal trial, such as the right to have the charges proven beyond a reasonable doubt, the right to be present at trial, and the right to present evidence on one's own behalf, are waived as a matter of necessity upon the entry of a guilty plea.[2] Moreover, circumstances indicating that such rights were relinquished as a conscious exercise of the accused's own volition, free from threats, force, duress or coercion, will compel the conclusion, as in the instant case, that the plea is valid.

In contrast to those rights which necessarily are waived in the *taking* of a guilty plea, a much broader category of rights

---

2. The right to appeal need not be waived in order for a valid guilty plea to be entered. However, where a waiver of that right is elicited as a condition of a plea agreement, the courts will uphold the waiver *(see, People v Moissett,* 76 NY2d 909; *People v Seaberg,* 74 NY2d 1; *supra; People v Burk,* 181 AD2d 74).

is deemed forfeited *as a consequence* of a valid plea of guilty. In recognition of the fact that a guilty plea "marks the end of a criminal case, not a gateway to further litigation" *(People v Taylor, supra,* at 5; *see, People v Green,* 75 NY2d 902, *cert denied* — US —, 111 S Ct 165; *People v Williams,* — AD2d —, 1992 NY Slip Op 02552 [2d Dept., July 6, 1992]), this forfeiture extends to issues regarding the factual elements of the crime charged and to most arguments advanced prior to the guilty plea. The reasoning underlying the forfeiture is straightforward: "where defendant has by his plea admitted commission of the crime with which he was charged, his plea renders irrelevant his contention that the criminal proceedings preliminary to trial were infected with impropriety and error; his conviction rests directly on the sufficiency of his plea, not on the legal or constitutional sufficiency of any proceedings which might have led to his conviction after trial" *(People v Di Raffaele,* 55 NY2d 234, 240).

Inasmuch as a guilty plea works a forfeiture of nonjurisdictional defects *(see, People v Williams, supra),* it "forecloses a host of challenges that would otherwise be reviewable as a matter of constitutional, statutory, or decisional law" *(People v Bray,* 154 AD2d 692, 696 [dissenting opn of Rosenblatt, J.]). Hence, the forfeiture occasioned by a guilty plea extends to claims premised upon, *inter alia,* a failure to provide CPL 710.30 notice *(see, People v Taylor,* 65 NY2d 1, *supra),* the statutory right to a speedy trial *(see, People v O'Brien,* 56 NY2d 1009; *People v Howe,* 56 NY2d 622), the denial of an application for leave to file a late motion to suppress *(see, People v Petgen,* 55 NY2d 529), whether a proper foundation was laid regarding the accuracy of a blood alcohol test *(see, People v Campbell,* 73 NY2d 481), transactional immunity *(see, People v Flihan,* 73 NY2d 729), the exercise of alleged discriminatory peremptory challenges *(see, People v Green,* 75 NY2d 902, *supra),* an ex post facto challenge to an evidentiary rule change *(see, People v Latzer,* 71 NY2d 920), adverse rulings on *Sandoval* and *Molineux* applications *(see, People v Johnson,* 141 AD2d 848; *People v Winchenbaugh,* 120 AD2d 811), motions relating to discovery, the disqualification of a prosecutor, severance, dismissal in the interest of justice, and separate trials *(see, People v Cusani,* 153 AD2d 574; *People v Cole,* 152 AD2d 851; *People v Grant,* 140 AD2d 623; *People v Macy,* 100 AD2d 557; *People v Smith,* 41 AD2d 893), preindictment prosecutorial misconduct *(see, People v Di Raffaele, supra),* an alleged unconstitutional statutory presumption *(see, People v*

*Thomas,* 53 NY2d 338), statutory previous prosecution and statutory immunity *(see, People v Prescott,* 66 NY2d 216, *cert denied* 475 US 1150; *People v Sobotker,* 61 NY2d 44), selective prosecution *(see, People v Rodriguez,* 55 NY2d 776), the Statute of Limitations *(see, People v Dickson,* 133 AD2d 492), the interpretation or application of a statute *(see, People v Levin,* 57 NY2d 1008), nonjurisdictional defects in Grand Jury proceedings *(see, People v Nelson,* 173 AD2d 205; *People v Martin,* 145 AD2d 440; *People v Bowen,* 122 AD2d 64), the sufficiency of the evidence supporting an indictment *(see, People v Dunbar,* 53 NY2d 868), and the form and factual specificity of an indictment *(see, People v Iannone,* 45 NY2d 589; *People v Hunt,* 148 AD2d 836; *People v Pollay,* 145 AD2d 972).

The foregoing list of rights and claims forfeited by operation of law upon a valid guilty plea, while lengthy, is by no means exhaustive. Indeed, "[t]he waivers [which flow from a guilty plea] are necessarily almost as numerous as the various rights afforded to the accused" *(People v Bray,* 154 AD2d 692, 696 [dissenting opn of Rosenblatt, J.], *supra).* Conversely, only an extremely limited group of issues survives the entry of a guilty plea and may properly be raised on a subsequent appeal *(see, e.g.,* CPL 710.70 [2] [providing for review of the denial of a motion to suppress under CPL 710.20]).[3] This narrow category is generally made up of claims which are jurisdictional in nature or relate to "fundamental matter[s]" *(People v Taylor,* 65 NY2d 1, 5, *supra),* or in the case of CPL 710.70 (2), where a statute specifically provides that the claim survives a plea of guilty. Hence, a defendant who pleads guilty is entitled to raise appellate contentions regarding, *inter alia,* the voluntary and knowing nature of his plea *(see, People v Seaberg, supra,* at 10), constitutional speedy trial claims *(see, People v Blakley,* 34 NY2d 311), constitutional double jeopardy claims *(see, Menna v New York,* 423 US 61), the defendant's incapacity to assist in the defense *(see, People v Armlin,* 37 NY2d 167; *People v Francabandera,* 33 NY2d 429), the unconstitutionality of the statute under which the defendant was convicted *(see, People v Lee,* 58 NY2d 491), the failure of the accusatory instrument to adequately charge a criminal offense *(see, People v Case,* 42 NY2d 98), or the procurement of the conviction based on an indictment supported solely by false evidence *(see, People v Pelchat,* 62 NY2d 97).

---

3. While CPL 710.70 (2) affords a defendant the right to challenge a suppression ruling despite his guilty plea, that right may be waived *(see, People v Williams,* 36 NY2d 829, *cert denied* 423 US 873).

Accordingly, the proper grounds for a postplea challenge, while incapable of complete enumeration, generally must involve some fundamental defect which deprived the court of jurisdiction or which constituted such an egregious violation of basic rights as to effectively render the proceedings a nullity.

## III.

Having set forth the relevant legal principles above, it merely remains for us to determine whether the defendant's appellate contentions come under that broad grouping of claims which are forfeited by a plea of guilty, or are so fundamental in nature as to survive his guilty plea. We find that they fall within the former category.

The defendant's primary claim is that the alleged police and prosecutorial misconduct in this case was so "repugnant to a sense of justice" as to require dismissal of the indictment notwithstanding his freely negotiated and extremely favorable plea bargain. He specifically points to the eavesdropping by police with respect to a brief portion of the interview taped by his attorney, the test-firing and consequent destruction of the "live" bullet recovered from the rifle, the purported "staging" of a photograph of the weapon and its submission to the Grand Jury, and the elicitation of opinion testimony from a nonexpert witness during the Grand Jury proceedings. These claims have been forfeited by the defendant's plea of guilty *(see, People v Di Raffaele,* 55 NY2d 234, 240, *supra* [a guilty plea forfeits a claim of preindictment prosecutorial misconduct, inasmuch as a voluntary admission of factual guilt largely obviates a reviewing court's concerns of protecting the defendant's rights and ensuring the fairness and propriety of his conviction]; *People v D'Angelo,* 145 AD2d 783 [defendant's valid plea of guilty, which provides ample basis for his conviction, forfeits his claim of police and prosecutorial misconduct]; *People v Persico,* 131 AD2d 603 [by pleading guilty, "defendant has forfeited any right to appellate review of the denial of his motion for a hearing * * * to determine whether the alleged misconduct of law enforcement officials violated his due process rights"]; *People v Buttiglione,* 125 AD2d 323 [guilty plea forfeits appellate review of claim that indictment was obtained in violation of the attorney-client privilege]; *People v Bowen,* 122 AD2d 64, *supra* [by virtue of his guilty plea, "defendant forfeited review of his claim that the prosecutor's conduct before the Grand Jury impaired its integrity"]).

■ The record simply fails to support the defendant's claim that the "misconduct" in this case was so egregious as to constitute a perversion of his fundamental rights. Although we certainly do not condone the improper actions of a New York State Police Senior Investigator in listening to portions of the taped interview between the defendant and his attorney, the hearing court found that he heard no more than a few brief excerpts of that interview while he repeatedly "rewound and played back the tape for approximately two to three minutes". That finding is amply supported by evidence in the hearing record, and we discern no basis for disturbing it *(see, People v Armstead,* 98 AD2d 726). Moreover, as accurately noted by the hearing court, the defendant could not establish that he suffered any prejudice as a result of this incident, and such a showing of prejudice is a prerequisite for dismissal of the indictment *(see, People v Pobliner,* 32 NY2d 356, *cert denied* 416 US 905 [where authorities improperly eavesdropped on attorney-client telephone conversations, the indictment would not be dismissed absent a showing that the prosecution could or would necessarily avail itself of the unlawfully obtained evidence to obtain a strategic advantage]; *People v Nikol,* 121 AD2d 746 [the surreptitious taping of the accused's conversations with an undercover officer subsequent to his arrest and retention of counsel did not irreparably undermine his rights to a fair trial or his right to counsel]). Indeed, by his entry of a guilty plea, the defendant himself foreclosed any possibility of demonstrating that this episode of police misconduct would impair his trial rights or his defense strategy. Therefore, this claim cannot fairly be said to constitute such a deprivation of fundamental rights as to survive the defendant's guilty plea *(see, e.g., People v Nelson,* 173 AD2d 205, *supra).* Moreover, we agree with the hearing court that a dismissal of the indictment is unwarranted under the circumstances of this case *(see, e.g., People v Persico,* 131 AD2d 603, *supra; People v Buttiglione,* 125 AD2d 323, *supra).*

■ The same analysis applies to the remaining instances of purported misconduct. The defendant's claim that a photograph of the weapon was "staged" by police is disingenuous, as the record demonstrates that an investigator merely prevented the ejection of a spent cartridge from the rifle so that a photograph which depicted the actual contents of the weapon could be taken. Moreover, the investigator fully explained the operation of the rifle, including the automatic ejection feature, to the Grand Jury. Hence, the issue was fully developed in the

Grand Jury proceedings and there simply is no basis upon which to conclude that the police or the prosecutor were attempting to mislead the Grand Jury by the introduction of the photograph.

■ Similarly, the claim that the investigator improperly gave opinion testimony before the Grand Jury is based upon a distorted perception of the facts. While the investigator was not qualified as an expert on firearms, he did state that, as a nine-year veteran of the police force, he had received extensive training in firearms and handled them on a routine basis in investigating crime scenes. Additionally, he thoroughly examined the weapon in this case and demonstrated a clear familiarity with the manner in which it operated. Given these facts, his competency to testify regarding that subject and to respond to hypothetical questions concerning the use of the weapon are not open to serious challenge. Therefore, it cannot be said that either of these purported errors, if errors they be, so tainted the proceedings as to warrant appellate review notwithstanding the defendant's guilty plea (see, People v Nelson, 173 AD2d 205, supra). In any event, we agree with the hearing court's rejection of these claims on the merits.

■ Likewise, the defendant's contention that the prosecutor also engaged in misconduct during the Grand Jury proceedings by placing the "staged" photograph in evidence and by eliciting opinion testimony from a nonexpert witness has been forfeited by his guilty plea, inasmuch as his allegations clearly do not support the conclusion that the integrity of the Grand Jury proceedings was impaired (see, People v Di Raffaele, 55 NY2d 234, supra; People v Nelson, supra; People v Bowen, 122 AD2d 64, supra). Moreover, were we to consider the issue, we would find it to be without merit for the reasons set forth above.

We further note that the defendant's reliance upon People v Isaacson (44 NY2d 511) and People v Pelchat (62 NY2d 97, supra) is misplaced, as each of those cases involved patently egregious conduct requiring dismissal of the indictment. In People v Isaacson (supra), the police essentially manufactured a crime which would not otherwise have occurred through a series of outrageously improper and arguably illegal acts involving violence, factual misrepresentations, deception and other reprehensible behavior. In People v Pelchat (supra, at 106-107), the conviction was reversed and the indictment dismissed, despite the defendant's entry of a guilty plea, "because the evidence before the Grand Jury failed to meet

legal standards and the prosecutor knew that when he permitted the court to take defendant's plea to the full indictment". No similarly egregious misconduct is involved in the case at bar, and the limited police impropriety herein certainly does not rise to the level of the pervasive and fundamental unfairness found in *People v Isaacson (supra)* and *People v Pelchat (supra)*.

■ The defendant's challenge to the test-firing of the "live" cartridge also has been forfeited by his guilty plea. Although he phrases the argument in terms of a "suppression" issue, it is clear from the motion papers submitted to the hearing court that he did not move for suppression pursuant to CPL article 710. Rather, he was seeking the imposition of a sanction (i.e., dismissal of the indictment or preclusion of evidence regarding the "live" bullet) based on the alleged improper destruction of the bullet evidence by the police. Accordingly, the hearing court's denial of that application is not reviewable pursuant to CPL 710.70 (2), inasmuch as that provision applies only to CPL article 710 motions to suppress *(see generally, People v Taylor,* 65 NY2d 1, 7, *supra)*. Rather, the hearing court's rejection of this claim amounted to an evidentiary ruling, review of which was forfeited by reason of the guilty plea. Indeed, "[w]here a defendant has by his plea admitted commission of the crime with which he is charged, the plea more than a confession, signals defendant's intention not to litigate the question of his guilt and normally renders irrelevant any consideration of whether his conviction should be reversed for evidentiary error" *(People v Campbell,* 73 NY2d 481, 486, *supra)*. Furthermore, the People's failure to argue on this appeal that the issue was forfeited by the defendant's guilty plea does not preclude us from making that determination, inasmuch as it is well settled that a forfeiture may be enforced by a reviewing court regardless of the prosecution's position on the issue *(see, People v Thomas,* 53 NY2d 338, *supra)*.

■ In any event, we discern no improvident exercise of discretion in the hearing court's refusal to impose the sanctions requested by the defendant. While the People have a duty to preserve evidence *(see, People v Kelly,* 62 NY2d 516, 520), the drastic sanctions sought for the breach of that duty were inappropriate under the circumstances of this case. Indeed, the hearing court found that the defendant's counsel was placed on notice of the existence of the bullet prior to its test-firing by virtue of the People's disclosure of a police

photograph showing the "live" cartridge in the rifle. Moreover, the hearing evidence demonstrates that firearms and ammunition used in the commission of crimes are routinely test-fired as a matter of standard police procedure, thus negating any possible suggestion that the bullet was destroyed in an effort to deprive the defense of evidence. Most importantly, the defendant's failure to establish at the hearing that he suffered any prejudice as a result of the test-firing of the bullet supports the court's denial of his sanctions application. In this regard, we note that the elaborate and tenuous claims of prejudice advanced by the defendant on this appeal are irrelevant to the issue, inasmuch as they were not presented to the hearing court. In view of the foregoing, there was no basis for the imposition of either of the drastic sanctions sought by the defendant, and he did not request any less severe sanction from the court. Hence, the hearing court acted properly in rejecting the application and in ruling that the defendant would be free to fully explore the issue at the trial.

■ The defendant's final contention consists of several claims attacking the adequacy of the indictment charging him with manslaughter in the second degree. However, it is firmly established that all challenges to nonjurisdictional defects in an indictment are forfeited by a guilty plea *(see, People v Beattie,* 80 NY2d 840; *People v Taylor,* 65 NY2d 1, *supra).* Therefore, we do not consider the defendant's claims that the indictment is duplicitous and lacks factual specificity *(see, People v Iannone,* 45 NY2d 589, *supra; People v Hunt,* 148 AD2d 836, *supra; People v Pollay,* 145 AD2d 972, *supra; People v Nicholson,* 98 AD2d 876).

The defendant also claims that the indictment is jurisdictionally defective because it fails to state each and every element of the crime charged. While it is true that "[a] valid and sufficient accusatory instrument is a nonwaivable jurisdictional prerequisite to a criminal prosecution" *(People v Case,* 42 NY2d 98, 99; *see, People v Harper,* 37 NY2d 96), the Court of Appeals has repeatedly observed that "an indictment is jurisdictionally defective only if it does not effectively charge the defendant with the commission of a particular crime" *(People v Iannone,* 45 NY2d 589, *supra* at 600; *see, People v Ray,* 71 NY2d 849; *People v Motley,* 69 NY2d 870). Contrary to the defendant's contention, the indictment herein charges him with manslaughter in the second degree in the language of Penal Law § 125.15 (1), and expressly refers to that statutory provision. Moreover, it alleges each and every element of the

offense, as well as the defendant's commission thereof. Accordingly, the indictment is jurisdictionally sufficient *(see, People v Ray, supra; People v Motley, supra; People v Iannone, supra)*, and "[a]ny issue concerning the proper interpretation or application of the statute was forfeited by [his] guilty plea" *(People v Levin,* 57 NY2d 1008, 1009, *supra; see, People v Pollay,* 145 AD2d 972, *supra).*

In view of the foregoing, the judgment is affirmed, inasmuch as the defendant's appellate contentions have been forfeited by the valid plea of guilty which he entered. To the extent he attempts to cast his claims within that narrow category of issues which survive a guilty plea, we find them to be without merit.

ROSENBLATT, MILLER and SANTUCCI, JJ., concur.

Ordered that the judgment is affirmed.