This opinion is uncorrected and subject to revision before
publication in the New York Reports.
-----------------------------------------------------------------

No. 145
The People &c.,
                Respondent,
        v.
Lerio Guerrero,
                Appellant.

Glenn A. Garber, for appellant.
Malancha Chanda, for respondent.

PIGOTT, J.:

The primary issue on this appeal is whether defendant,
by pleading guilty to all of the counts of an amended indictment,
forfeited his right to challenge the legal sufficiency of the so-

- 1 -

called "DNA indictment"[1] and the subsequent amendment that added only his name to that indictment.  We hold that defendant, by pleading guilty, forfeited his right to challenge both the underlying "DNA indictment" and the amended indictment that named him.

I.

On November 8, 1998, a man attacked a woman as she was entering her apartment.  The man held a piece of broken glass to the victim's throat, cutting himself and leaving blood on the victim's coat.  He forced the victim into her apartment, where he sexually assaulted her and stole her wallet.  He then took her to an ATM and forced her to withdraw money.  The victim escaped and was transported to a hospital where a rape kit was prepared.  In addition to recovering the man's blood from the victim's coat, investigators also recovered a "joint" impression from the ATM receipt.  Although 16 latent fingerprints were recovered from the crime scene, only six were deemed "usable."

As part of the ensuing investigation, in addition to recovering the usable fingerprints and entering them in the state fingerprint identification system (but uncovering no match), investigators processed the crime scene, canvassed the apartment building for potential witnesses, obtained video surveillance footage from the ATM, distributed it to the press for release to

---

[1] A "DNA indictment" is one that identifies the defendant by his or her DNA profile as opposed to by name.

the public, and had the victim review mug shots and do a sketch with an NYPD sketch artist. Although the police could not locate or identify the perpetrator, they were able to isolate the perpetrator's DNA profile from the rape kit. In July 1999, investigators deemed the case "closed" because all leads had been exhausted.

On April 13, 2005, a New York County grand jury, utilizing the perpetrator's DNA profile as an identifier, charged the perpetrator by "DNA indictment" (under the name "John Doe") with one count of rape in the first degree (Penal Law § 130.35 [1]), two counts of sodomy in the first degree (Penal Law § 130.50 [1]), burglary in the first degree (Penal Law § 140.30 [3]), two counts of robbery in the first degree (Penal Law § 160.15 [3]), and attempted robbery in the first degree (Penal Law §§ 110.00, 160.15 [3]).

As part of the grand jury presentation, in addition to presenting the testimony of the victim, the People called an expert in DNA analysis. That expert, who worked for the Office of the Chief Medical Examiner, testified that the DNA profile developed from the rape kit matched the DNA profile taken from the blood found on the victim's coat. The expert also testified that the chances that the perpetrator and another person shared the same DNA profile was less than a trillion to one.

In May 2011, while questioning defendant concerning an unrelated rape in Brooklyn, investigators recovered defendant's

DNA from a cigarette butt.  That evidence was sent to the Office of the Chief Medical Examiner (OCME), which determined that the DNA profile taken from the cigarette butt matched the profile taken from the evidence obtained in the instant rape case. Investigators also matched the joint impression taken from the ATM receipt to the joint on defendant's right index finger.

On June 9, 2011, the People moved, on notice to defendant, to amend the April 13, 2005 indictment to add defendant's name to the caption.  As bases for the amendment, the People explained that: (1) a detective for the Manhattan Special Victims Squad had spoken with a detective with the Brooklyn Special Victims Squad, and learned that defendant had smoked a cigarette in the latter detective's office and that detective had vouchered the cigarette butt and sent it to the OCME Forensic Biology laboratory; (2) the assistant director of the OCME Forensic Biology laboratory determined that the DNA profile from the cigarette butt matched the DNA profile taken from the rape kit and victim's coat; and (3) the detective for the Manhattan Special Victims Squad had spoken with a detective from the Latent Print Unit, who compared defendant's joint impression to the impression left on the ATM receipt and determined that they matched.  Defendant was arrested on June 10, 2011 and arraigned on the DNA indictment.

Defendant thereafter filed an omnibus motion seeking, among other things, an order denying the People's motion to amend

the indictment (CPL 210.20; 210.25 [defective indictment]) and dismissing the DNA indictment on the grounds that its prosecution was untimely (CPL 30.10 [statute of limitations]; 210.20 [1] [f]) and was violative of defendant's right to a speedy trial (CPL 30.20 [1]; 30.30 [1] [a]; 210.20 [1] [g]).  As relevant here, defendant claimed that the DNA indictment was legally insufficient to establish the identity of the perpetrator and that the 2005 grand jury presentation lacked "competent testimonial and scientific evidence" to link the DNA profile to him.  In addition, defendant argued that the People's motion to amend the indictment contained "double hearsay" relative to the recovery of the cigarette butt and the matching of the fingerprint to the ATM receipt, and "hearsay" relative to the DNA match of the cigarette butt with the rape kit and victim's coat. The People opposed those parts of the omnibus motion seeking dismissal of the DNA indictment and denial of the motion to amend.

Supreme Court denied defendant's motion to dismiss the DNA indictment as defective and in violation of defendant's right to a speedy trial, and upheld the amendment of the indictment. The court held that the prosecution was not time-barred on speedy trial grounds because investigators had exercised "reasonable diligence" in attempting to locate defendant.[2]  Defendant then

---

[2] Defendant successfully sought reargument of Supreme Court's ruling relative to the amended indictment and the statute of limitations determination.  Upon reargument, Supreme Court

pleaded guilty to each count in the amended indictment.  As a condition of the plea, he also executed a written waiver of his right to appeal.  Supreme Court sentenced defendant as promised to a 15-year prison term on each count (to run concurrently), with five years' postrelease supervision.

In affirming Supreme Court, the Appellate Division held that defendant was not deprived of his constitutional right to a speedy trial, and that defendant's arguments concerning the DNA indictment, amended indictment and statute of limitations were forfeited by his guilty plea and "foreclosed by his valid waiver of the right to appeal" (126 AD3d 613, 613-614 [1st Dept 2015]). A Judge of this Court granted defendant leave to appeal, and we now affirm.

II.

Defendant does not challenge the voluntariness of his plea, nor does he claim that the DNA indictment or amended indictment failed to provide adequate notice of the charges. Rather, defendant contends that the DNA indictment was not based upon legally sufficient evidence establishing his identity as the perpetrator, and that the indictment was improperly amended by

denied defendant's motion except as to the issue whether investigators exercised "reasonable diligence" in their attempt to identify defendant.  Before a hearing on that issue was held, however, the People successfully moved for reconsideration of Supreme Court's reargument order, with Supreme Court holding that the People had submitted additional evidence establishing that investigators had in fact exercised reasonable diligence, such that a hearing was unnecessary.

reliance on hearsay statements.  Specifically, defendant argues

that the evidence submitted in support of the amended indictment

should have been presented through live, non-hearsay testimony

before a grand jury so the grand jury had an opportunity to

assess the evidence in determining whether defendant matched the

DNA profile and make a determination as to whether defendant

should be indicted.  Essentially, defendant argues that the

identification of the perpetrator is an essential element of

proof that must be established before a grand jury, and that the

procedure employed here deprived defendant of his fundamental

constitutional right to be prosecuted by indictment for a felony

offense, which, according to defendant, is jurisdictional in

nature.[3]

Generally, a guilty plea marks the end of a criminal

matter as opposed to providing a gateway to further litigation

(see People v Hansen, 95 NY2d 227, 230 [2000], citing People v

Taylor, 65 NY2d 1, 5 [1985]).  Certain matters will survive a

guilty plea, however, such as those involving "jurisdictional

defects" (People v Iannone, 45 NY2d 589, 600 [1978]) or "rights

of a constitutional dimension that go to the very heart of the

---

[3]  Defendant makes the additional argument that his
prosecution for rape in the first degree was untimely under the
five year statute of limitations that was in effect at the time.
We have held, however, that "[t]he statute of limitations under
CPL 30.10 is not a jurisdictional matter, nor is it a right of
constitutional dimension" that survives a guilty plea (People v
Parilla, 8 NY3d 654, 659 [2007]).  As such, defendant's statute
of limitations argument is not properly before us.

process" (Hansen, 95 NY2d at 230).  "The distinction between jurisdictional and nonjurisdictional defects 'is between defects implicating the integrity of the process . . . and less fundamental flaws, such as evidentiary or technical matters'" (People v Dreyden, 15 NY3d 100, 103 [2010], quoting Hansen, 95 NY2d at 231).

A jurisdictional defect in an indictment may not be waived by a guilty plea and can be raised for the first time on appeal (see Iannone, 45 NY2d at 600; People v Scott, 3 NY2d 148 [1957]).  "[A]n indictment is jurisdictionally defective only if it does not effectively charge the defendant with the commission of a particular crime, by, for example, failing to allege every material element of the crime charged, or alleging acts that do not equal a crime at all" (Hansen, 95 NY2d at 231, citing Iannone, 45 NY2d at 600).

Before a person accused of a felony is required to defend against that charge, the People must first persuade a grand jury that there are "sufficient legal reasons . . . to believe the person guilty" (Hansen, 95 NY2d at 231 [citation omitted]). CPL 190.65 (1) provides, in relevant part, that "a grand jury may indict a person for an offense when (a) the evidence before it is legally sufficient to establish that such person committed such offense . . . and (b) competent and admissible evidence before it provides reasonable cause to believe that such person committed such offense."

Insufficiency of an indictment's factual allegations, however, does not constitute a jurisdictional defect that is reviewable by this Court (see Iannone, 45 NY2d at 600-601, citing People v Soto, 44 NY2d 683, 684 [1978]), and, once a guilty plea has been entered, "the sufficiency of the evidence before the grand jury cannot be challenged" (Hansen, 95 NY2d at 233 [citation omitted]).  Thus, "'[a] guilty plea generally results in a forfeiture of the right to appellate review of any nonjurisdictional defects in the proceedings'" (People v Konieczny, 2 NY3d 569, 572 [2004], quoting People v Fernandez, 67 NY2d 686, 688 [1986]).

Here, the DNA indictment properly charged a person with acts that constitute a crime, albeit identifying the individual by a unique DNA profile rather than by his name.  As such, it avoided the jurisdictional infirmities we mentioned in Iannone. Defendant's challenge to the legal sufficiency of the DNA indictment is based on the failure to identify him as the perpetrator by name, but this alleged defect is not a jurisdictional one, and therefore, does not survive his guilty plea.  By pleading guilty, defendant acknowledged that he was the person who committed the offense.  Defendant therefore forfeited his challenge and is foreclosed from raising the issue on appeal. Once defendant pleaded guilty, his "'conviction rest[ed] directly on the sufficiency of the plea, not on the legal or constitutional sufficiency of any proceedings which might have

led to a conviction after trial'" (Hansen, 95 NY2d at 230,
quoting People v DiRaffaele, 55 NY2d 234, 240 [1982]).

                              III.

        Defendant next claims that his challenge to the amended
indictment based on the hearsay grounds survived his guilty
plea.[4]  We disagree.

        The People's motion to amend requested that the DNA
indictment be amended to only reflect defendant's name.  In
support of that motion, the People presented certain hearsay
statements that, among other things, linked the DNA profile
contained in the DNA indictment to DNA developed from a cigarette
butt smoked by defendant.  But, by pleading guilty to the amended
indictment, defendant forfeited the argument that the People
improperly utilized the hearsay statements to link defendant's
DNA to the DNA profile contained in the DNA indictment (see
Hansen, 95 NY2d at 231-232; see e.g. People v McGuire, 122 AD3d
947, 947 [2d Dept 2014], lv denied 26 NY3d 969 [2015]; People v
McKinney, 122 AD3d 1083, 1083 [3d Dept 2014], lv denied 25 NY3d
1167 [2015]; People v Torres, 117 AD3d 1497, 1498 [4th Dept], lv
denied 24 NY3d 963 [2014]).  The amendment simply added
defendant's name to the indictment, so that it was listed along
with his DNA profile (see People v Bogdanoff, 254 NY 16, 29
[1930]).  As such, defendant's hearsay challenges to the amended

_____

        [4] Defendant never denied that he was the perpetrator, merely
asserting the evidentiary hearsay issue.

indictment are nonjurisdictional in nature and also did not survive defendant's guilty plea or appeal waiver.

                              IV.

        Finally, although defendant's constitutional speedy trial argument survived defendant's guilty plea and appeal waiver (see People v Blakley, 34 NY2d 311, 314 [1974]), we affirm the Appellate Division's determination that there was no constitutional violation (see People v Taranovich, 37 NY2d 442 [1975]).

        Accordingly, the order of the Appellate Division should be affirmed.

People v Guerrero

No. 145

RIVERA, J.(dissenting):

Defendant Lerio Guerrero claims he was deprived of his constitutional right to indictment by a Grand Jury when the People failed to present that accusatory body with the evidence matching his DNA to the genetic numerical identifier in the caption of the original indictment. Since a Grand Jury has never accused defendant specifically of the crime for which he stands convicted, and the amended indictment that substituted his name for the DNA profile of the unknown perpetrator was not the product of a Grand Jury's deliberative process, defendant's conviction must be reversed and the indictment dismissed.[1]

The facts and relevant procedural history of this appeal are not in dispute. Shortly before the statute of limitations expired, the People obtained a Grand Jury indictment charging an unknown perpetrator for crimes arising from a sexual assault and robbery. The police investigation had proved unsuccessful in identifying a person responsible for the crimes charged, and, based on samples from the rape kit, the caption

_____

[1] Given my conclusion that the conviction must be overturned and the indictment dismissed as constitutionally defective, I take no position on the majority's resolution of defendant's remaining claims.

- 1 -

referred to the perpetrator as a "John Doe," with a DNA profile consisting of a 14-row genetic numerical identifier.

Years later, after police obtained a sample of defendant's DNA during the course of an unrelated investigation, the People moved to amend the indictment upon presentation of double hearsay evidence, asserting that defendant's DNA matched the genetic numerical identifier.  A judge granted the motion. Defendant unsuccessfully moved to dismiss the indictment based, in part, on the People's failure to present the linking evidence to the Grand Jury.  Thereafter, defendant pleaded guilty to the crimes charged in the amended complaint.  On appeal to this Court he renews his claim that the indictment is defective and asserts that his guilty plea does not bar this Court's review.  Defendant is correct on both points.

The State Constitution expressly provides for indictment by a Grand Jury before an individual may be tried for an infamous crime (NY Const, Art 1, § 6; see also People v Iannone, 45 NY2d 589, 593 n 3 [1978]).  This requirement is "intended to prevent the People of this State from potentially oppressive excesses by the agents of the government in the exercise of the prosecutorial authority vested in the State" (Iannone, 45 NY2d at 594 [internal citations omitted]).  "Thus, before a person may be publicly accused of a crime and put to the onerous task of defending himself from such accusations, the State must convince a Grand Jury composed of the accused's peers

that there exists sufficient evidence and legal reason to believe the accused guilty" (id.).  As the constitutional "check" on the prosecutorial power of the State and in its accusatory role, the Grand Jury "remains the exclusive judge of the facts with respect to any matter before it" (People v Pelchat, 62 NY2d 97, 105 [1984]).[2]

A defendant who pleads guilty may assert challenges on appeal that "relate either to jurisdictional matters or to rights of a constitutional dimension that go to the very heart of the process" (People v Hansen, 95 NY2d 227, 231 [2000] [emphasis added]).  Here, defendant's challenge is constitutional in nature because his claim is grounded in the "fundamental right" to have a Grand Jury of his peers determine whether evidence and legal reason support the charges against him (Iannone, 45 NY2d at 593). Specifically, he argues that the indictment is defective because the People did not present the linking DNA evidence to the Grand Jury for it to consider whether to charge him as the person matching the DNA profile.

Contrary to the majority's view, this is not a nonjurisdictional challenge to the sufficiency of the indictment (maj at 9).  Defendant neither claims that the evidence is quantitatively deficient, nor asserts a technical error as to form, both of which are arguments foreclosed by his plea (see

_____

[2] The opportunity for a defendant to waive indictment by Grand Jury upon consent of the district attorney is not at issue on this appeal (see NY Const, Art 1, § 6).

Hansen, 95 NY2d at 231 [explaining that "evidentiary or technical
matters" do not survive a guilty plea and arguments about the
sufficiency of the evidence presented to the Grand Jury are
foreclosed]).

Rather, he claims that substitution of his name for the
DNA numerical identifier requires the exercise of the Grand
Jury's accusatory power and cannot be accomplished on submission
to the trial court by a motion to amend.  The defect concerns who
may accuse defendant based on evidence of a match to the
inculpatory DNA, and therefore goes to the essential role of the
Grand Jury and the "integrity of the process" (id.).

This distinction is critical because while a challenge
to the sufficiency of the indictment qua document is forfeited by
a defendant's plea, a challenge to the indictment as the
embodiment of the Grand Jury deliberative process may be raised
on appeal.  In Iannone, this Court held that "the basic essential
function of an indictment qua document is simply to notify the
defendant of the crime of which he stands indicted" so that the
defendant may prepare a defense (45 NY2d at at 598).  Defendant's
claim does not center on the notification purpose of the
indictment, but on the essential accusatory role of the Grand
Jury within the criminal justice system.  That role requires that
the Grand Jury indict him specifically, if persuaded by the
People's DNA linking evidence (People v Calbud, Inc., 49 NY2d
389, 394 [1980] ["The primary function of the Grand Jury in our

system is to investigate crimes and determine whether sufficient evidence exists to accuse a citizen of a crime and subject him or her to criminal prosecution."]).

The People argue that defendant forfeited his claim because the Grand Jury did in fact decide to indict the person with the DNA numerical sequence identifier as set forth in the indictment caption. While the Grand Jury may have indicted an unknown person with a genetic descriptor, the indictment and amended indictment do not constitute a Grand Jury accusation of him specifically because the Grand Jury never considered whether the DNA evidence matched defendant.

Turning to the merits, this is not a typical change of name by which one moniker is replaced with another. First, the DNA profile consisting of 14 rows of numbers and letters is not commonly understood as a person's "name." Second, despite the People's attempt to minimize the task-at-hand as simply ministerial in nature, more was required than the exchange of a known person's name for an alpha numeric descriptor. As illustrated by the record and the People's hearsay evidence, the amendment process was complex; it required untainted collection of defendant's DNA and preservation of the chain of custody, as well as genetic testing and the scientific assessment and opinion-based comparison of DNA samples.

Also unpersuasive is the People's argument that substitution of defendant's name is a technical change within the

meaning of CPL 200.70 (1).  This provision allows for amendment
of the indictment:

> "at any time before or during trial, . . . with
> notice to the defendant and opportunity to be
> heard . . . with respect to defects, errors or
> variances from the proof relating to matters of
> form, time, place, names of persons and the
> like, when such an amendment does not change
> the theory or theories of the prosecution as
> reflected in the evidence before the Grand Jury
> which filed such indictment, or otherwise tend
> to prejudice the defendant on the merits."

However, the statute does not apply to DNA indictments because
substitution of a person's name for a genetic numerical sequence
is not error correction.  Indeed, the People have never taken the
position, nor could they, that the DNA sequence presented to the
Grand Jury is defective or mistaken.  They do not argue that
there is a variance from proof relating to defendant's name
because, of course, there was no proof of his name in the
indictment originally presented to the Grand Jury.  This is
understandable because in the DNA indictment context, name
substitution is not mere error correction, intended to cure a
misspelling or a misunderstanding about a person's legal name.

Given the nature of changing a name in the DNA
indictment context, the People's interpretation of CPL 200.70 (1)
is also not in accord with its legislative purpose to change the
strict common law rule that forbade even minor changes to an
indictment (People v Perez, 83 NY2d 269, 273-76 [1994]
[explaining that the Legislature passed CPL 200.70 in response to

this Court's decision in <u>People v Van Every</u> (222 NY 74 [1917]),
which dismissed an indictment for legal impossibility because it
stated that the crime occurred on a future date]). Unlike an
incorrect name or alias, which constitutes a defect or clerical
error in an indictment, the substitution of a human being's name
for a genetic alpha-numerical sequence requires establishing the
scientifically acceptable link between the DNA obtained from the
crime and a defendant's DNA.

     Furthermore, the People assert that our case law
characterizes a name change on an indictment as a mere
technicality, but a close reading of the cited authority reveals
that the cited case was about the modern approach to the
indictment process. Specifically, the People cite <u>People v
Bogdanoff</u> to support their proposition that a name change is a
technicality, but <u>Bogdanoff</u>, decided in 1930, upheld the legality
of simplified indictments and clarified that the legal formalism
of common law indictments was no longer relevant (254 NY 16, 32
[1930]; <u>see</u> <u>also</u> <u>Iannone</u>, 45 NY2d at 597 [interpreting <u>Bogdanoff</u>
in this manner]).  In <u>Bogdanoff</u>, the defendants attempted to
challenge an indictment as being too ambiguous in its description
of the crime, and the Court held that the Bill of Particulars
could be used to interpret the indictment (<u>id.</u> at 25).  The Court
made reference to "fictitious or erroneous names" only as an
example of the liberalization of the indictment process, and in
this context recognized that "error in description or name may be

corrected or disregarded" (id. at 29). The Court's move away from the highly technical formalities of the past does not permit removal from the Grand Jury of its essential function as an accusatory body.[3]

Close examination of this case exposes that the People's argument has no basis in our jurisprudence. Rather, Bogdanoff merely upheld the liberalization and simplification of indictments by use of a bill of particulars showing "that an accusation of crime was intended and calculated to describe the crime for which the accused is held" (254 NY at 30-31). This is easily distinguishable from what the People seek to do in this appeal. Additionally, Bogdanoff was decided before the discovery of DNA and the application of scientific advancements that allow

---

[3] The same is true of the cases cited in the Bogdanoff decision. First, in People v Seidenschner (210 NY 341 [1914]), the co-defendants argued that their criminal aliases should not be included in the indictment because they would prejudice the jury, but the Court held that both their true names and criminal aliases could properly be included in the indictment. Second, in People v Johnson (104 NY 213 [1887]), the name of the victim was missing from the indictment, and the defendant argued that this was an essential element of the crime such that indictment was insufficient to charge him with a crime. However, the Court held that the victim's name need not be included in the indictment (id. at 217). Lastly, in Mouquin v Hecht (22 F2d 264, 265 [2d Cir 1927]), the Second Circuit held that an indictment charging "Louis A. Mouquin" need not be corrected, even though the defendant's true name was "Louis C. Mouquin." Though this case is nearest to the rule urged by the People here, it still misses the mark because the case refers to a minor change to the name of a known defendant. Taken together, these cases illustrate that the authority upon which the People's argument is built does not support its conclusion and is easily distinguishable from the facts presented here.

the People to identify a perpetrator based on a genetically and biologically-based numerical sequence. This case is not appropriate guidance or binding precedent on the issue presented on this appeal.

The fact is that the perpetrator was not known and the People never presented the Grand Jury with any name -- fictitious or otherwise--but with a scientific method for identifying the alleged perpetrator. There is no doubt about the crime charged or that the DNA presented to the Grand Jury is alleged to belong to the perpetrator. No extraneous evidence is necessary to clarify the meaning of the Grand Jury's words. Instead, the Grand Jury simply never accused defendant as the person linked to the DNA of the perpetrator.

There are also policy reasons to reject the People's argument that substitution of a name for a DNA profile does not require Grand Jury involvement. The People secured the DNA indictment fully aware that in order to prosecute a suspect identified in the future, a name would have to be substituted for the DNA profile, and this would require presenting DNA evidence establishing a link between a named human being and the crime. If, prior to 2005, law enforcement had matched defendant's DNA to the DNA from the rape kit, the People would have presented the evidence at that time to the Grand Jury. Allowing the People to amend the indictment once the necessary DNA evidence was discovered years later, without submission to the Grand Jury,

perverts the intended purpose of CPL 200.70 to address insignificant changes to the indictment and thereby avoid dismissals due to technical defects (see Perez, 83 NY2d at 276). It also undermines the purpose of the Grand Jury to "prevent the People . . . from potentially oppressive excesses . . . in the excesses of the prosecutorial authority vested in the State" (Iannone, 45 NY2d at 594).

To the extent the People suggest that defendant may challenge the linking evidence at trial, this ignores the reality that cases are overwhelmingly resolved by pleas, which is further reason to reaffirm a defendant's right to the Grand Jury's consideration of the evidence linking him to the crime.  For example, "[n]inety-seven percent of federal convictions and ninety-four percent of state convictions are the result of guilty pleas" (Missouri v Frye, 132 S Ct 1399, 1407 [2012], citing Department of Justice, Bureau of Justice Statistics, Sourcebook of Criminal Justice Statistics Online, Table 5.22.2009).  The numbers speak for themselves and make plain that the vast majority of defendants will never go to trial, therefore lose the chance to challenge the DNA evidence before a jury of their peers.  Yet, DNA evidence is an extremely potent tool for the People (People v Wright, 25 NY3d 769, 783 [2015]). "The persuasiveness of DNA evidence is so great that . . . '[w]hen DNA evidence is introduced against an accused at trial, the prosecutor's case can take on an aura of invincibility'" (id.

[internal citation omitted]).  With such high stakes, it is even more important to preserve the Grand Jury's role as a check against prosecutorial abuse.

    The practical impact of requiring the People to present the DNA linkage evidence to a Grand Jury in cases involving DNA indictments is limited, and the law already provides a mechanism to address these situations.  The People may obtain a superceding indictment that relates back to the earlier indictment (People v Lomax, 50 NY2d 351, 356 [1980]; People v Sinistaj, 67 NY2d 236, 237 [1986]).  Additionally, if dismissal of the indictment is required, the People may re-present to another Grand Jury (Lomax, 50 NY2d at 356). Though a holding in favor of a defendant will sometimes require additional action by the People, this should not impact our analysis.  Arguments about "the waste of prosecutorial resources that will result from requiring a superseding indictment" have merit but are "policy considerations [that] must be addressed by the Legislature, however, not the courts" (Perez, 83 NY2d at 276).

    For these reasons, the People failed to present the Grand Jury with the only evidence linking defendant to the alleged perpetrator's DNA, depriving him of his fundamental right to Grand Jury indictment.  His conviction should be reversed and the indictment dismissed.

* * * * * * * * * * * * * * * * *

Order affirmed.  Opinion by Judge Pigott.  Chief Judge DiFiore
and Judges Abdus-Salaam, Stein, Fahey and Garcia concur.  Judge
Rivera dissents in an opinion.

Decided October 27, 2016